[No. A117381. First Dist., Div. Five. Mar. 26, 2008.]

MITCHELL J. BILAFER, Plaintiff and Appellant, v.
MARTIN J. BILAFER, Individually and as Trustee, etc., et al., Defendants
and Respondents.

[No. A118093. First Dist., Div. Five. Mar. 26, 2008.]

MITCHELL J. BILAFER, Plaintiff and Appellant, v.
JUDITH A. DOYLE et al., Defendants and Respondents.

**COUNSEL**

Luce, Forward, Hamilton & Scripps, Charles A. Bird, Mary F. Gillick and Jeremiah J. Moffit for Plaintiff and Appellant.

Aaron, Riechert, Carpol & Riffle, Charles M. Riffle, Juliette D. Nguyen and Brian E. Kulich for Defendant and Respondent Martin J. Bilafer in No. A117381.

No appearance for Defendant and Respondent Martin J. Bilafer in No. A118093.

No appearance for Defendant and Respondent Judith A. Doyle in Nos. A117381 and A118093.

**OPINION**

**SIMONS, Acting P. J.**—On December 30, 1999, Mitchell J. Bilafer (Mitchell)[1] executed two irrevocable trusts (collectively, the 1999 Trusts). In 2006, Mitchell filed petitions to reform the 1999 Trusts to conform them to his intent. The trial court denied each petition, determining Mitchell lacked standing under common law and under Civil Code section 3399 to petition for reformation. We conclude the trustor of an irrevocable trust, like Mitchell, has standing to petition to reform the trust when he claims a drafting error has interfered with the execution of his dispositive intent. We reverse the court's order denying Mitchell's petitions for lack of standing and remand to the trial court to address the merits of the petitions.

## BACKGROUND

The petitions for modification alleged as follows: In 1994, Mitchell executed two irrevocable trusts, the 1994 Martin Trust and the 1994 Judith Trust (collectively, the 1994 Trusts), for the benefit of two of his children, Martin and Judith, and their heirs. Mitchell never funded the 1994 Trusts, because he and his then wife entered divorce proceedings and Mitchell put his estate planning on hold. During the divorce proceedings, Martin asked that a change be made to the terms of the 1994 Martin Trust, so that he could give his wife a lifetime income interest in the trust if he should die before her. Mitchell agreed to draft new trusts with the same terms as the 1994 Trusts, except that the new trusts would allow Martin and Judith to appoint a

---

[1] Because of the family relationship of the parties, we adopt their practice and refer to them by their first names. No disrespect is intended.

Judith A. Doyle (Judith), as an individual, and Martin J. Bilafer (Martin), as trustee of the Judith A. Doyle Gift Trust dated December 30, 1999 (the 1999 Judith Trust), are defendants in case Nos. A117381 and A118093.

Martin, as an individual and as trustee of the Martin J. Bilafer Gift Trust dated December 30, 1999 (the 1999 Martin Trust), is the sole actively participating respondent in case No. A117381.

Neither Judith nor Martin, as trustee of the 1999 Judith Trust, are actively participating respondents in case No. A118093.

lifetime interest to their respective spouses. On December 30, 1999, Mitchell executed the 1999 Trusts. The 1999 Trusts were materially identical to each other, except that Judith was designated as the primary beneficiary of the 1999 Judith Trust, and Martin was designated as the primary beneficiary of the 1999 Martin Trust. Mitchell appointed Martin as trustee of both the 1999 Martin Trust and the 1999 Judith Trust.

The petitions for modification further alleged that in late 2005, Mitchell discovered that the 1999 Trusts did not reflect his intent in a number of ways. There were "five major discrepancies" between Mitchell's intent and the terms of the 1999 Trusts related to Martin and Judith.[2] These discrepancies were due to drafting errors made by the attorney who had drafted the 1999 Trusts. The petitions asked the court to modify the 1999 Trusts in order to correct the drafting errors and give effect to Mitchell's intent.

On October 12, 2006, Martin opposed the petition for modification of the 1999 Martin Trust. Martin argued, inter alia, that the petition should be denied because Mitchell lacked standing to modify the 1999 Martin Trust.

The court heard argument on Mitchell's petitions for modification of the 1999 Trusts on November 15, 2006, and on February 8, 2007, issued an order denying Mitchell's petition as to the 1999 Martin Trust for lack of standing. The order stated: "No case law supports the right of a [trustor] of an irrevocable trust to bring a motion for reformation. In addition, [trustor] has no pecuniary interest and is not an aggrieved party under Civil Code [section] 3399." On May 23, 2007, following an ex parte application by Mitchell requesting clarification of the court's order, the court issued a second order denying Mitchell's petition for modification as to the 1999 Judith Trust on the same grounds.

---

[2] The alleged discrepancies are as follows: (1) the 1999 Trusts permit the trustee (Martin) to make distributions of the principal to the primary beneficiary (Martin or Judith), while Mitchell intended that no distributions of principal be made to Martin or Judith; (2) the 1999 Trusts give Martin and Judith the power to appoint the principal or income to living issue, spouses of issue, or former spouses of issue, while Mitchell intended their power to appoint to be more limited; (3) the 1999 Trusts contain inconsistent statements of their effective date, while the true effective date was December 30, 1999; (4) Judith and Martin's power of appointment over the nonexempt trust was intended to be a general power of appointment to allow the income beneficiary the right to appoint the assets of the nonexempt trust to the income beneficiary's creditors; and, (5) the 1999 Trusts state that upon the primary beneficiary's death, the trust assets will be distributed upon the principle of representation to the issue of the primary beneficiary, while Mitchell intended the assets to pass in equal shares to all of his grandchildren. The petitions also identified several other discrepancies in the provisions related to subtrusts created for the benefit of Mitchell's grandchildren and great-grandchildren.

Mitchell filed timely appeals of the court's orders as to both the 1999 Martin Trust and the 1999 Judith Trust. The two appeals were consolidated.

## DISCUSSION

Mitchell contends the court erred because, as the trustor of the 1999 Trusts, he has standing to seek reformation under common law and under Civil Code section 3399. Martin maintains that the court correctly denied Mitchell's petitions for lack of standing, because Mitchell is not an intended beneficiary and has no ongoing interest in the 1999 Trusts. "Standing is a question of law that we review de novo. [Citation.]" (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 [32 Cal.Rptr.3d 656].)[3]

### I. *California Courts Can Reform a Trust to Correct a Drafting Error*

■ In 1986, the Legislature substantially revised the Probate Code[4] and "codified the common law equitable power of trial courts to modify the terms of a trust instrument where such modification is necessary to serve the original intentions of the trustors. [Citation.]" (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 83 [70 Cal.Rptr.2d 887] (*Ike*).) Though this revision was intended to impose "comprehensive" rules for modifying trusts (Recommendation Proposing the Trust Law (Dec. 1985) 18 Cal. Law Revision Com. Rep. (1986) pp. 511, 573 (Trust Recommendation)), the sections enacted do not expressly provide that they are the exclusive means to do so. Thus, "the broader equitable power of trial courts to modify or reform a trust is preserved by operation of section 15002, which expressly provides: 'Except to the extent that the common law rules governing trusts are modified by statute, the common law as to trusts is the law of this state.' " (*Ike*, at p. 84.)

■ No provision of the Probate Code specifically authorizes the reformation of an irrevocable trust where a mistake in drafting nullifies the trustor's

---

[3] The parties also address the merits of Mitchell's petitions. We emphasize that in deciding the question of standing, we express no opinion on the merits. Whether Mitchell is entitled to reformation is a question to be decided by the trial court on remand, and will depend on the resolution of factual disputes that we do not address on this appeal. Further, we do not foreclose the possibility that, on remand, the trial court could determine that Mitchell does not seek reformation to correct drafting errors, but, in fact, seeks to otherwise modify the 1999 Trusts. This issue goes to the merits of Martin's petitions and is not addressed here.

[4] All undesignated section references are to the Probate Code.

intent. Section 15409[5] comes closest, but expressly applies only when circumstances arising *after* the creation of the trust interfere with its purpose.

■ At common law, a trial court had the equitable power to reform an irrevocable trust where a drafting error defeats the trustor's intentions. (*Ike, supra,* 61 Cal.App.4th at pp. 82–83; *Lissauer v. Union Bank & Trust Co.* (1941) 45 Cal.App.2d 468, 473 [114 P.2d 367] (*Lissauer*).) *Ike* confirms that this authority remains today. (*Ike,* at p. 83.)

## II. *A Trustor Has Standing to Seek Reformation for a Drafting Error*

*Lissauer* and *Ike* involved petitions to reform a trust filed by a beneficiary or a trustor who was also a beneficiary. It is also noteworthy that a petition to reform filed under section 15409, discussed above, may be filed only by a "trustee" or "beneficiary," not the trustor. Martin argues that Mitchell, a trustor who is not a beneficiary, and who has no pecuniary interest at stake in this matter, does not have standing to seek reformation. We disagree.

Neither party has cited and our independent research has not revealed any California cases deciding this precise question. However, it is clear that other states have permitted a trustor who is not a beneficiary to seek reformation of an irrevocable trust. In many states, though not California, a trust is presumed to be irrevocable. (Bird, *Trust Termination: Unborn, Living, and Dead Hands—Too Many Fingers in the Trust Pie* (1985) 36 Hastings L.J. 563, 572 (*Trust Termination*).)[6] Courts in those states have frequently concluded that where sufficient evidence is presented that the power to revoke was omitted by mistake, the trustor was entitled to reformation of the trust to include that power. (4 Scott on Trusts (4th ed. 1989) § 332, pp. 390–391, and cases cited therein; *Trust Termination,* at p. 572.)

---

[5] Section 15409 provides:

"(a) On petition by a trustee or beneficiary, the court may modify the administrative or dispositive provisions of the trust or terminate the trust if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust. In this case, if necessary to carry out the purposes of the trust, the court may order the trustee to do acts that are not authorized or are forbidden by the trust instrument.

"(b) The court shall consider a trust provision restraining transfer of the beneficiary's interest as a factor in making its decision whether to modify or terminate the trust, but the court is not precluded from exercising its discretion to modify or terminate the trust solely because of a restraint on transfer."

[6] This article was written as a background study prepared for the California Law Revision Commission as it considered the revisions to the Probate Code adopted in 1986. (Trust Recommendation, 18 Cal. Law Revision Com. Rep., *supra,* at p. 565, fn. 241.)

In those out-of-state cases the trustor had a pecuniary interest in reforming the trust; the addition of a power to revoke effectively permitted the trustor to reclaim assets previously designated to the beneficiaries. But trustors lacking a pecuniary interest have also been permitted to reform a trust containing a drafting error in the description of trust property or the beneficiaries. (*Trust Termination, supra*, 36 Hastings L.J. at pp. 572–573; Wright, *Termination of Trusts in Pennsylvania—Some Current Trends* (1967) 115 U. Pa. L.Rev. 917, 930–931; see Bogert & Radford, The Law of Trusts and Trustees (3d ed. 2006) § 991, pp. 130–131 ["If, due to a mistake, the trust does not contain the terms that were intended by the settlor, the settlor or other interested party may maintain a suit in equity to have the instrument reformed so that it will contain the terms that were actually agreed upon or that reflect the testator's actual intent." (Fn. omitted.)].) Thus, it would seem that so long as state standing rules are satisfied, a trustor may petition to reform a trust that, due to a drafting error, does not accurately reflect the trustor's intent.

■ In assessing standing, California courts are not bound by the "case or controversy" requirement of article III of the United States Constitution, but instead are guided by "prudential" considerations. (*Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872, 877–878 [42 Cal.Rptr.3d 79].) "One who invokes the judicial process does not have 'standing' if he, or those whom he properly represents, does not have a real interest in the ultimate adjudication because the actor has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." (*California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22–23 [61 Cal.Rptr. 618]; see *Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 629 [51 Cal.Rptr.3d 797].) "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.]" (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610].) "California decisions . . . generally require a plaintiff to have a personal interest in the litigation's outcome." (*Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1046 [17 Cal.Rptr.2d 400].)

■ Mitchell, as trustor of the 1999 Trusts, has standing to petition to reform those trusts on the basis that drafting errors defeated his dispositive intent, even in the absence of any pecuniary interest by him in the outcome. As Mitchell argues, if the 1999 Trusts are not reformed, he suffers a real and substantial injury: his estate will pass to his children and grandchildren in a manner contrary to his wishes. In a somewhat different context, the California Supreme Court has recognized that "the right to testamentary disposition of one's property is a fundamental one which reaches back to the early common law; 'the right to dispose of one's property by will is most solemnly assured

by law, and . . . does not depend upon its judicious use.' [Citation.]" (*Estate of Fritschi* (1963) 60 Cal.2d 367, 373 [33 Cal.Rptr. 264, 384 P.2d 656]; *id.* at p. 377 [holding that substantial evidence did not support jury verdict invalidating will because testator lacked testamentary capacity and was under undue influence]; accord, *Jacobs v. Gerecht* (1970) 6 Cal.App.3d 808, 811 [86 Cal.Rptr. 217].) Mitchell's petitions allege a violation of his fundamental right to dispose of his property as he intended. This alleged injury is certainly "of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." (*California Water & Telephone Co. v. County of Los Angeles, supra*, 253 Cal.App.2d at p. 23.)[7]

Martin argues that public policy dictates that Mitchell should not have standing, because trustors "should not be allowed to treat their irrevocable trusts as revocable." However, permitting a nonbeneficiary trustor such as Mitchell to seek reformation of a trust, on the narrow grounds that the written trust does not accurately reflect his intent due to a drafting error, by no means authorizes trustors to "unilaterally rewrite" irrevocable trusts. And we have confidence in the trial courts' ability to distinguish between actual drafting errors and the mere claim of error disguising a new, postdrafting, dispositive intent.

■ Martin further argues that Mitchell should not have standing because he received consideration from the irrevocable trust. However, this assertion is disputed, at least to the extent that it implies any consideration received approached the market value of Mitchell's property placed into the 1999 Trusts. We do not resolve that factual dispute because it goes to the merits of Mitchell's petitions for reformation, not to the threshold determination of whether he has standing. A party's entitlement to reformation of a trust may depend in part on whether the party seeking reformation received consideration. "A trust may be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust may be rescinded or reformed." (Rest.3d Trusts, § 62.) "Where no consideration is involved in the creation of a trust, it can be rescinded or reformed upon the same grounds, such as fraud, duress, undue influence, or mistake, as those upon which a gratuitous transfer of property not in trust can be rescinded or reformed. Where consideration is involved in the creation of a trust, the rules governing transfers for value and contracts are applicable." (Rest.3d Trusts, § 62, com. a, p. 436.) We express no opinion on the merits of Mitchell's petitions, but conclude only that he has standing to pursue them.

---

[7] Having decided that under the common law Mitchell has standing to pursue his petition, we need not address his standing arguments under Civil Code section 3399.

## DISPOSITION

The trial court's orders denying Mitchell's petitions for lack of standing are reversed. The matter is remanded for determination of the merits of Mitchell's petitions.

Mitchell is entitled to his costs on appeal.

Needham, J., and Stevens, J.,* concurring.

---

*Retired Associate Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.