[No. E046248. Fourth Dist., Div. Two. Sept. 22, 2009.]

PATRICIA REYCRAFT, Plaintiff and Appellant, v.
ANTHONY YONGAE LEE et al., Defendants and Respondents.

1212

COUNSEL

Center for Disability Access and Russell C. Handy for Plaintiff and Appellant.

Leonard J. Cravens for Defendants and Respondents.

OPINION

RAMIREZ, P. J.—Plaintiff and appellant Patricia Reycraft appeals from the trial court's ruling she does not have standing to maintain a cause of action for damages against defendants for monetary damages under Civil Code section 54.3.[1]

---

[1] All further statutory references are to the Civil Code unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

■ Plaintiff has elected to proceed only on a single cause of action against defendants for money damages under section 54.3 based on an alleged violation of sections 54 and 54.1, also known as the California Disabled Persons Act (DPA). Section 54, subdivision (a), states in pertinent part as follows: "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities . . . public facilities, and other public places." Subdivision (c) of section 54 states that: "A violation of the right of an individual under the Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section." Subdivision (a)(1) of section 54.1 also states in pertinent part that: "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities . . . hotels, lodging places, places of public accommodation . . . and other places to which the general public is invited . . . ." For purposes of this section, " '[f]ull and equal access' " "means access that meets the standards of Titles II and III of the Americans with Disabilities Act of 1990 and federal regulations adopted pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards." (§ 54.1, subd. (a)(3).)

The parties waived a jury and elected to proceed to a bench trial on this single cause of action based on stipulated facts. According to the stipulated facts, plaintiff has some paralysis on her right side, uses two forearm crutches, and has a hard brace on her right leg. She walks with a walker and cannot walk without these aids. Defendants are owners and operators of the Tamarisk Mobile Home & RV Park (the Park), which is located in Riverside County. At the Park, tenants rent spaces by the day, week, or month.

A swimming pool is one of the facilities available at the Park for use by tenants and their guests. A $10 fee is assessed for guests who use the pool. The Park is not otherwise open to the public and has a locked gate that can only be opened by tenants.

From February 2, 2004, to March 2, 2004, plaintiff's sister-in-law was a tenant at the Park. As a tenant, the sister-in-law registered at the Park, paid rent, signed a copy of the Park rules, and agreed to obey all of the Park rules. Although she does not recall the exact date, plaintiff visited her sister-in-law

at the Park during this time period to use the swimming pool. However, plaintiff was unable to use the pool because there was no pool lift or other device to help her get in or out of the pool. The sister-in-law did not register plaintiff as a guest, and plaintiff did not pay the $10 guest fee to use the pool.

Plaintiff alleges she is entitled to damages because she discovered that the pool and restroom facilities at the Park were not compliant with the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG). In this regard, the stipulated facts state as follows: "Before the lawsuit was filed, the women's restroom at the Clubhouse (pool) was not compliant with the ADAAG. During the lawsuit the defendants installed a pool lift and remodeled the restroom to bring it into compliance with the ADAAG."

## DISCUSSION

The trial court's ruling states, "because the Plaintiff was not a registered guest and did not pay the guest fee, she has no standing to complain that [defendants] failed to provide her with an accommodation." Plaintiff argues the trial court's ruling is erroneous based on the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12111 et seq.). According to plaintiff, title 42 United States Code section 12188(a)(1) gives her standing to file suit without engaging in a "futile gesture," such as formally registering or paying an entrance fee, if she has "actual knowledge" that the business is not accessible and is in violation of the ADA.

Defendants argue this case is controlled by *Jankey v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 212 F.3d 1159 (*Jankey*). Based on *Jankey*, defendants believe the ADA does not apply under the circumstances, because the Park is private and not actually open to the public. According to defendants, the Park is not a place of public accommodation under the ADA as to plaintiff, because she did not register and pay for admittance as a tenant and did not register as a guest or pay the guest fee.

In *Jankey*, access to the defendant's production facility was restricted to employees and authorized guests, and security personnel were placed at the entrance to enforce these restrictions. For business purposes, the plaintiff, who was confined to a wheelchair, obtained a visitor's pass and had visited the defendant's facility on numerous occasions over a 20-year period. (*Jankey, supra,* 212 F.3d at pp. 1160–1161.) Because he was unable to access a commissary and automatic teller machine at the facility, the plaintiff sued the

defendant in federal court claiming discrimination under the public accommodations provisions of title III of the ADA (42 U.S.C. §§ 12181–12189). (*Jankey*, at pp. 1160–1161.) However, the Ninth Circuit affirmed summary judgment in favor of the defendant, because the defendant's facility was a private establishment rather than a place of public accommodation under title 42 United States Code section 12187, and was therefore not covered by title III of the ADA. (*Jankey*, at p. 1161.)

When the facts are undisputed, the legal significance of those facts is a question of law, and a reviewing court is free to draw its own conclusions independent of the ruling by the trial court. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) In short, our review of the trial court's decision on the dispositive issue of standing is de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

█ In our view, the federal authorities relied on by the parties in their respective briefs are not relevant to determining whether plaintiff has standing to maintain an action for money damages against defendants under section 54.3 of the DPA. First, standing in federal courts is limited by article III of the United States Constitution.[2] "In assessing standing, California courts are not bound by the 'case or controversy' requirement of article III of the United States Constitution . . . ." (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 370 [73 Cal.Rptr.3d 880].) Second, a federal court's "interpretation of a federal statute's standing requirements does not determine the scope of standing provided by a California statute." (*Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1385 [271 Cal.Rptr. 99].) Defendants' reliance on the *Jankey* case is therefore misplaced. Plaintiff's only remaining cause of action was brought under the DPA, not the ADA.

█ Under section 54.1, subdivision (a)(1), of the DPA, disabled individuals are "entitled to full and equal access" to "hotels, *lodging places, places of public accommodation . . . and other places to which the general public is invited . . . .*" (Italics added.) On the record before us, we can only conclude

---

[2] " 'Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a *real or immediate threat* of an irreparable injury.' [Citation.]" (*Hangarter v. Provident Life & Accident Ins. Co.* (9th Cir. 2004) 373 F.3d 998, 1021–1022.) Three elements must be present to establish standing in federal court: "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical," ' [citation]. Second, there must be a causal connection between the injury and the conduct complained of . . . . [Citation.] Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' [Citation.]" (*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 560–561 [119 L.Ed.2d 351, 112 S.Ct. 2130], fn. omitted.)

the Park falls within section 54.1. As far as we can tell, the general public is invited to the Park on a daily, weekly, or monthly basis, as long as they pay the rent or fees and follow the rules. Whether plaintiff actually paid the rent or other fees and followed the rules is not relevant to determining whether the Park itself falls within the DPA's broad definition of places that must afford "full and equal access" to "[i]ndividuals with disabilities." In other words, the Park does not fall outside section 54.1 simply because an individual who went there did not pay the rent or fees and/or did not follow the rules. However, any such facts could be relevant to determining whether and to what extent a particular disabled individual suffered recoverable damages as a result of a violation of section 54.1.

■ Third, the statutory standing requirements to recover monetary damages under section 54.3 of the DPA are not the same as those set forth for litigants who pursue a cause of action under the ADA. This is apparent based on the plain language of the applicable statutes. "Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III."[3] (*Wander v. Kaus* (9th Cir. 2002) 304 F.3d 856, 858.) An individual with a disability can file a suit for injunctive relief under the ADA if he or she " '*is being subjected to* discrimination on the basis of disability' " or has " 'reasonable grounds for believing' " he or she " '*is about to be subjected to*' " discrimination. (*Pickern v. Holiday Quality Foods* (9th Cir. 2002) 293 F.3d 1133, 1136 (*Pickern*).) In other words, a plaintiff filing suit under the ADA is only entitled "to injunctive relief to stop or to prevent" injury. (*Pickern*, at p. 1136.) For purposes of the ADA, a plaintiff acquires standing and suffers an injury as soon as he or she actually becomes aware of the existence of discriminatory conditions at a public accommodation and is thereby deterred from visiting or patronizing that accommodation. (*Pickern*, at pp. 1136–1137.) "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." (*Id.* at p. 1137.) The purpose of the "futile gesture" provision cited by plaintiff is simply to clarify that prior discrimination is not a prerequisite to a suit for injunctive relief under the ADA, because

---

[3] Title 42 United States Code section 12188(a)(1) states as follows: "The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." Section 2000a-3(a) permits the person aggrieved to file a civil action for "preventive relief, including an application for a permanent or temporary injunction" if "there are reasonable grounds to believe that any person is about to engage" in a discriminatory act or practice. Section 12183 defines discrimination as it pertains to new construction and alterations in public accommodations and commercial facilities.

a plaintiff may sue if he or she "is about to be subjected" to discrimination. Such a plaintiff must have " 'actual notice' " of a discriminatory condition based on a personal encounter or through experts in a place he or she would visit in the imminent future but for the discriminatory barriers to access. (*Resnick v. Magical Cruise Co.* (M.D.Fla. 2001) 148 F.Supp.2d 1298, 1302.)

The DPA provides two distinct private causes of action to individuals with disabilities. First, individuals with disabilities who have been "aggrieved or potentially aggrieved by a violation of Section 54 or 54.1" can file an action "to enjoin the violation." (§ 55.) Similar to the ADA, prior discrimination is not a prerequisite to a suit for injunctive relief under section 55 of the DPA, because a plaintiff may sue if he or she is "aggrieved or potentially aggrieved by a violation of Section 54 or 54.1." Second, individuals with disabilities can file an action seeking "actual damages" against "[a]ny person or persons, firm or corporation who denies or interferes with [their] admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1." (§ 54.3, subd. (a).) Section 54.3 states in part as follows: "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees . . . ."

■ Although section 54.1 of the DPA specifically states that "full and equal access" means access that meets ADA standards, this does not mean we must look to federal law to determine whether a plaintiff has standing to recover monetary damages under section 54.3. Rather, the differences in the standing requirements of the ADA and section 54.3 of the DPA are apparent based on the plain language of the relevant statutes. Under section 54.3 of the DPA, a disabled individual has standing to recover monetary damages if he or she was actually denied equal access to a public place. Under the ADA, a disabled individual has standing to seek an injunction to stop or prevent future harm from a discriminatory condition in a public place, whether or not he or she has actually been denied equal access to a public place. Because the requirements are obviously different, we must look to California law on the issue of standing, as well as to the specific statutory language of section 54.3 to determine whether plaintiff in this case has standing to maintain a cause of action against defendants for a violation of the DPA.

■ Under California law, a plaintiff generally has standing if he or she is able to allege some invasion of a legally protected interest. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 [59 Cal.Rptr.3d 142, 158 P.3d 718] (*Angelucci*).) However, "[s]tanding rules for actions based upon statute may vary according to the intent of the Legislature and the purpose of the enactment." (*Ibid.*) In *Angelucci*, our Supreme Court granted review to consider the issue of standing on a claim for damages brought under section 52, subdivision (a), of the Unruh Civil Rights Act. (*Angelucci*, at pp. 164–165.) The purpose of the Unruh Civil Rights Act is similar to that of the DPA—it protects an individual's right to " 'full and equal' access" to " 'all business establishments.' " (*Angelucci*, at p. 167.)

The plaintiffs in *Angelucci* were men who claimed discrimination because they patronized the defendant club on several occasions and were charged an admission fee higher than the fee charged to women and were charged higher prices solely because they were men. (*Angelucci, supra*, 41 Cal.4th at pp. 164–165.) The trial court granted the defendant's motion for judgment on the pleadings because the plaintiffs did not allege they demanded to be charged the same rate as female patrons before filing suit, and the appellate court agreed. (*Id.* at p. 165.) However, the Supreme Court reversed, concluding the plaintiffs adequately stated a cause of action for discrimination, because section 52, subdivision (a), did not limit the right to recover damages to persons who demanded and were refused equal treatment. (*Angelucci*, at pp. 173–177.)

In reaching its decision in *Angelucci*, our Supreme Court stated as follows: "[A] plaintiff must have standing to bring an action under the Act. We do not dispute the Court of Appeal's admonition that 'a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct.' [¶] In general terms, in order to have standing, the plaintiff must be able to allege injury—that is, some 'invasion of the plaintiff's legally protected interests.' [Citations.] [¶] . . . In essence, an individual plaintiff has standing under the Act if he or she has been the victim of the defendant's discriminatory act. [Citation.] [¶] Plaintiffs adequately alleged they had suffered an 'invasion of . . . legally protected interests' [citation] sufficient to afford them an interest in pursuing their action vigorously. According to their allegations, each of the plaintiffs was subjected to, and paid, defendant's gender-based price differential. Accepting plaintiffs' factual allegations as true, as we are required to do in reviewing a judgment entered on the pleadings, plaintiffs must be considered 'person[s] denied the rights provided in Section 51.' [Citation.]" (*Angelucci, supra*, 41 Cal.4th at pp. 175–176.)

In a similar case entitled *Surrey v. TrueBeginnings, LLC* (2008) 168 Cal.App.4th 414 [85 Cal.Rptr.3d 443] (*Surrey*), the "critical issue" considered on appeal was "whether someone who presents himself or herself to a business with the intent of purchasing its services or products, but becomes aware of that business's practice of charging different amounts for such services or products based on gender and thereafter does not purchase those services or products, is aggrieved by that practice so as to have standing to sue for violations of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.; the Act) and the Gender Tax Repeal Act of 1995 (Civ. Code, § 51.6; the Gender Tax Repeal Act)." (*Id.* at p. 416.) The defendant operated an online match-making service and offered free services to women, because it had a disproportionately high percentage of male patrons and wanted to cure the imbalance. (*Id.* at pp. 416–417.) The plaintiff visited the defendant's Web site and intended to use the services but decided not to do so after discovering the discrepancy in its charges to male and female patrons. (*Id.* at p. 417.) Citing *Angelucci, supra,* 41 Cal.4th at page 160, and other similar cases, the appellate court in *Surrey* agreed with the defendant that the plaintiff lacked standing to sue, because he had never paid for the defendant's services. (*Surrey,* at pp. 417–420.) "The mere fact that [the plaintiff] became aware [the defendant] was offering a discount policy for women subscribers at the time he accessed its Web site did not constitute a denial of his antidiscrimination rights under [the applicable] statutes. Since [the plaintiff] did not attempt to subscribe to [the defendant's] services, his interest in preventing discrimination is arguably no greater than the interest of the public at large." (*Id.* at pp. 418–419.)

"The private cause of action [for monetary damages] provided by section 54.3 [of the DPA] has not been extensively considered by our courts." (*Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 262 [65 Cal.Rptr.3d 838] (*Urhausen*).) However, there are two published cases that have considered the issue of standing in the context of a suit for damages under section 54.3. Both of these cases are consistent with our view that standing under section 54.3 of the DPA is not the same as standing to pursue a claim for injunctive relief under the ADA or the DPA and requires something more than mere awareness of or a reasonable belief about the existence of a discriminatory condition.

First, in *Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168 [266 Cal.Rptr. 804] (*Donald*), the plaintiff, a wheelchair user, went to a restaurant that had three levels of seating. The primary dining areas were on the top two levels, but were only accessible by stairs. The bottom level was a bar that was rarely used for dinner service. The plaintiff was told he could be seated

in the bar on the bottom level or he could be lifted up the stairs to a dining room on the upper levels. Unwilling to be lifted, the plaintiff left the restaurant. (*Id.* at pp. 173–174.) The configuration of the restaurant indisputably violated applicable disabled access regulations. (*Id.* at p. 174.) The appellate court concluded the plaintiff was entitled to recover damages on his cause of action for unequal access under section 54.3 but was not entitled to an award of damages on his separate cause of action to enforce compliance with applicable access laws. (*Donald*, at p. 183.) In reaching this determination, the appellate court distinguished between an action to enforce compliance and an action for damages under section 54.3: "A designated public agency or an individual may initiate an action to *enforce compliance* with the handicapped access standards . . . . On the other hand, to maintain an action for *damages* pursuant to section 54 et seq. an individual must take the additional step of establishing that he or she was denied equal access on a particular occasion. . . . For example, let us take a restaurant that is required to have 100 percent of its dining area accessible to the handicapped, but in fact only 90 percent of the dining area meets this standard. If a handicapped individual is readily seated and served in the 90 percent primary dining area which meets all handicap access requirements, then he or she would not have a cause of action for damages for denial or interference with admittance pursuant to Civil Code section 54.3, but an individual or a designated public agency could pursue an action under one of the enforcement provisions to bring about full compliance by the restaurant." (*Donald*, at p. 183.)

In the more recent case of *Urhausen, supra,* 155 Cal.App.4th 254, the disabled plaintiff walked with crutches because of a neuromuscular condition. She went to a drugstore, which had two blue-painted disabled parking spaces directly in front of the entrance. In between these spaces, there was a blue-painted disabled access aisle, which led to a curb cut in front of the store entrance, and a short access ramp ran from the bottom of the curb cut to the store entrance. The plaintiff decided not to park in a disabled access parking spot even though it was unoccupied. Instead, she parked in a regular parking space adjacent to a disabled access space. She then got out of her vehicle, walked diagonally across the disabled parking space and over the curb in front of that space, because it was the shortest route available and because she was usually able to step up over curbs of standard height despite her disability. (*Id.* at pp. 258–259.) However, she fell and was injured before she reached the curb in front of the disabled parking space. (*Id.* at p. 259.) She filed a complaint for negligence and denial of equal access under the DPA. It was later determined that the slope of the disabled parking space where the plaintiff fell, as well as the slope of the access ramp, were too high and therefore did not comply with applicable regulations. (*Urhausen*, at p. 259.) The plaintiff argued she should be able to recover damages under the DPA,

because the noncompliant slope of the disabled parking space caused her to fall and prevented her from reaching the store. (*Urhausen*, at p. 264.)

Reasoning as follows, the appellate court in *Urhausen* concluded the plaintiff lacked standing to maintain a cause of action for damages under section 54.3: "While we recognize that the failure of the parking space to comply with slope requirements was the cause of plaintiff's injury, and therefore a cause of her failure to reach the entrance of the drugstore, we do not believe that this is sufficient to demonstrate that plaintiff was denied equal access to the store. . . . It is undisputed . . . that [the store] provided access to its entrance by way of an aisle, curb cut, and ramp installed for the particular use of the disabled. Because this means of access was at all times available for plaintiff's use, she cannot demonstrate that she was denied equal access to the store without demonstrating that this route, too, was inadequate. By her own acknowledgement, however, she was fully capable of negotiating a typical disabled access ramp. It was plaintiff's injury, and not the physical configuration of the store, that prevented plaintiff from entering. Accordingly, she was not *denied* equal access to the store; rather, she was *unable* to enter as a result of her fall." (*Urhausen, supra*, 155 Cal.App.4th at p. 263, fn. omitted.) "If plaintiff had attempted to use the disabled access aisle, curb cut, and ramp and had fallen because these were not in compliance with statutory requirements, she would presumably have a cause of action under the DPA. The cause of action would not arise because plaintiff was injured, however, but because her fall suggested that the store did not provide safe access for disabled persons, thereby denying them equal access. In that situation, her injury would not be the basis of the cause of action but would be evidence of a lack of equal access. Here, in contrast, plaintiff did not demonstrate that the means for disabled access provided by [the store] was unsafe or otherwise unusable by her. Because plaintiff did not demonstrate that she was denied equal access, section 54.3 provides no remedy for her injury." (*Id.* at pp. 264–265.)

In sum, "section 54.3 imposes the standing requirement that the plaintiff have suffered an actual denial of equal access before any suit for damages can be brought. . . . [A] plaintiff cannot recover damages under section 54.3 unless the violation actually denied him or her access to some public facility. [¶] Plaintiff's attempt to equate a denial of equal access with the presence of a violation of federal or state regulations would nullify the standing requirement of section 54.3, since any disabled person could sue for statutory damages whenever he or she encountered noncompliant facilities, regardless of whether that lack of compliance actually impaired the plaintiff's access to those facilities. Plaintiff's argument would thereby eliminate any distinction between a cause of action for equitable relief under section 55 and a cause of action for damages under section 54.3 . . . ." (*Urhausen, supra*, 155 Cal.App.4th at pp. 265–266.)

██ Based on the foregoing, the California cases cited above, when read together, indicate standing under section 54.3 of the DPA is established where a disabled plaintiff can show he or she actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion. If, as in *Angelucci*, the business or public place does not allow admittance without a fee, a disabled plaintiff would need to show he or she presented himself or herself to the business or public place intending to patronize it and to pay the admission fee to gain admittance to the business or public place as any other customer would do but was actually denied equal access. The plaintiffs in *Angelucci* were able to establish standing because they patronized the defendant club on several occasions and were actually charged an admission fee higher than the fee charged to women solely because they were men. (*Angelucci, supra*, 41 Cal.4th at pp. 173–177.) By contrast, the plaintiff in *Surrey* only "visited" the defendant Web site and considered using the defendant's online matchmaking services. However, he discovered a discriminatory practice before paying a fee that was required in order to actually utilize the services offered on the Web site. He was therefore unable to establish standing to recover monetary damages. (*Surrey, supra*, 168 Cal.App.4th at pp. 417–420.)

In the *Donald* case, the business was a restaurant, which unlike the businesses in *Angelucci* and *Surrey*, did not charge an admission fee to gain admittance to the business. As a result, payment of an admission fee was not required to establish standing. Instead, the disabled plaintiff was able to establish standing by showing he actually presented himself to the restaurant on a particular occasion, as any other customer would do, with the intent of being seated at a table to be served and to purchase food and/or beverages in the manner offered. In doing so, he could show he actually encountered access to seating inside the restaurant that was not full and equal. He therefore had standing and was entitled to recover damages under section 54.3. (*Donald, supra*, 218 Cal.App.3d at pp. 173–183.)

██ In this case, the trial court relied solely on plaintiff's failure to register as a guest and pay the guest fee to conclude plaintiff did not have standing under section 54.3. Based on the cases cited above, the trial court was justified in doing so. Defendants are in the business of renting spaces to tenants with mobilehomes and recreational vehicles. The Park has a locked gate that can only be opened by tenants who have paid rent and who agree to abide by all of the Park rules. "The park is not otherwise open to the public." The rules state guests must be registered and pay a $10 guest fee to use the pool. The parties stipulated that defendants enforce the rules. Plaintiff says she went to the Park as a guest of her sister-in-law, but she did not register as a guest or pay the guest fee to use the pool. Nor does she state she had any

intent to register or to pay the guest fee. As a result, she is unable to show she actually presented herself to the business, as any other customer or guest would do, with the intent of paying the guest fee in order to gain admittance to the Park and/or to use the pool.

The stipulated facts are also not specific enough to show an actual denial or interference with access on a particular occasion, as opposed to merely becoming aware of discriminatory conditions in the pool area of the Park. Plaintiff only specifies a one-month timeframe for her visit to the Park and does not recall the exact date of her visit. Nothing is revealed about the circumstances of her visit to the Park or to the pool. Plaintiff simply states she "visited" the pool without saying how she visited. Standing alone, the word "visited" is ambiguous in this context. For example, did plaintiff "visit" the pool by simply driving by and observing it from afar without actually seeking or attempting admittance in some way? Was plaintiff able to observe the inaccessible features of the pool from her vehicle without getting out of the vehicle and entering the pool facility? Did plaintiff actually enter the pool facility and personally observe a lack of accessibility, or did her sister-in-law or someone else just tell her the pool was inaccessible to her?[4]

In our view, the details of plaintiff's "visit" to the pool, as well as whether she actually registered as a guest and paid any applicable fees, would all be relevant to resolve a factual dispute as to whether she had statutory standing to sue for an award of monetary damages under section 54.3. If all of the relevant facts only established an awareness of or a reasonable belief about unequal access, plaintiff's remedy would be to seek injunctive relief under section 55 rather than an award of monetary damages under section 54.3 of the DPA. Otherwise, as the court indicated in *Urhausen*, there would be no difference between a cause of action for equitable or injunctive relief under section 55 or the ADA and one for monetary damages under section 54.3. Accordingly, under the circumstances presented by the stipulated facts, we cannot disagree with the trial court's ruling that plaintiff does not have standing to maintain a cause of action against defendants for monetary relief under section 54.3.

During oral argument, plaintiff's counsel urged us to reach a contrary conclusion in this case based on two federal cases entitled *Arnold v. United Artists Theatre Circuit, Inc.* (N.D.Cal. 1994) 866 F.Supp. 433 (*Arnold*), and *Botosan v. Paul McNally Realty* (9th Cir. 2000) 216 F.3d 827 (*Botosan*).

---

[4] During oral argument, plaintiff's counsel suggested we should read the facts as if they said plaintiff actually entered the pool facility, "saw" the inaccessible features of the pool, and then decided not to use the pool, and/or not to take the "extra step" of actually paying the applicable guest fee. However, it would not be appropriate for us to add facts that are simply not included in the parties' stipulation.

These cases have essentially interpreted section 54.3 broadly to confer standing on a disabled plaintiff who is not actually denied equal access on a particular occasion but who is merely deterred from patronizing a business or other public place based on mere knowledge of an inaccessible condition. The disabled plaintiffs in *Arnold* used wheelchairs or walking aids, such as crutches. They sought damages against the defendant movie theatres under section 54.3, because defendant's failure to conform to the applicable disability access standards deterred them from patronizing the movie theatres. The plaintiffs did not allege they were "actually afforded legally inadequate accommodations" on a particular occasion at any of the theatres. (*Arnold*, at pp. 434–435.)

The federal district court in *Arnold* concluded section 54.3 was "inconclusive as to the availability of damages for incidents of deterrence" and further stated, "California case law sheds no light on this question either." (*Arnold, supra*, 866 F.Supp. at p. 437.) Citing public policy considerations, such as maximizing incentives for compliance with the DPA, the federal district court concluded section 54.3 should be interpreted broadly to include deterrence claims. (866 F.Supp. at pp. 437–439.)

As the court in *Donald* recognized, "Our primary task is to ascertain the Legislature's intent so as to effectuate the purpose of the law. . . . [¶] . . . '[A] statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts [citations] . . . .' " (*Donald, supra*, 218 Cal.App.3d at pp. 176–177.) In addition, we must view a statute "reasonably and in a commonsense fashion." (*Id.* at p. 177.)

Section 55 of the DPA most definitely provides the remedy of injunctive relief for deterrence claims, because it allows a disabled plaintiff who is "aggrieved or potentially aggrieved" to file an action "to enjoin the violation." (§ 55.) As the court in *Arnold* recognized, section 54.3 of the DPA does not include any express language that could be construed to include deterrence claims. Instead, a disabled plaintiff can file an action seeking "actual damages" against any person or business "who denies or interferes with admittance to or enjoyment of" public places. If the Legislature intended to allow an action for damages to those "potentially aggrieved," it could have added this or similar language to section 54.3, as it did in section 55.[5] Under

---

[5] In fact, while this case was pending, the Legislature passed new legislation, which made substantial changes to the DPA, to improve "compliance with access laws while protecting businesses from abusive access litigation." (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 677 [94 Cal.Rptr.3d 685, 208 P.3d 623].) New section 55.56, subdivision (b), "restricts the availability of statutory damages under sections 52 and 54.3," permitting the recovery of monetary damages only if " 'the plaintiff personally encountered the violation on a particular

these circumstances, we can reasonably assume the difference in the two statutes was intentional. Based on these differences, we must conclude the statutes as written were intended to provide two distinct remedies to disabled plaintiffs depending on whether they were simply deterred (i.e., "potentially aggrieved") or actually denied equal access. Without more, these statutes, when read together, appear to provide disabled plaintiffs with a complete legal remedy to achieve the purpose of the DPA—"to reduce or eliminate the physical impediments to participation in community life by the physically handicapped. [Citation.]" (*Donald, supra,* 218 Cal.App.3d at pp. 177–178.) In other words, we disagree with the federal district court's analysis in *Arnold* and would have denied standing under section 54.3 to the plaintiffs in that case.

We also reject plaintiff's reliance on the Ninth Circuit's decision in *Botosan.* The disabled plaintiff in *Botosan* filed suit under the Unruh Civil Rights Act (§ 51 et seq.),[6] and he was able to show he went to the defendant's real estate office on a particular occasion to patronize the business, but he was prevented from entering the office and becoming a customer because there were no designated parking spaces for disabled persons. Citing *Arnold,* the Ninth Circuit concluded the plaintiff was entitled to recover statutory damages under section 52, subdivision (a), of the Unruh Civil Rights Act because "[a]t the least, these [undisputed] facts make out a case of deterrence." (*Botosan, supra,* 216 F.3d 827 at p. 835.) In reaching its conclusion, the Ninth Circuit cited the *Arnold* decision with no analysis. In addition, *Botosan* is factually distinguishable from this case. In our view, the undisputed facts in *Botosan* established more than a case of mere deterrence. The plaintiff in *Botosan* was able to show he presented himself at the defendant's place of business, presumably by riding there in a vehicle, as other customers would do, with the intent of patronizing the business inside, but was denied equal access to the business because there were no handicapped parking spaces. (*Botosan,* at p. 835.)

---

occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion' (§ 55.56, subd. (b))." (*Munson,* at pp. 677–678.) However, new section 55.57, subdivision (a), states that: "Nothing in this part is intended to affect litigation filed before [January 1, 2009], and no inference shall be drawn from provisions contained in this part concerning the state of the law as it existed prior to January 1, 2009."

[6] The DPA and the Unruh Civil Rights Act "have significant areas of overlapping application." (*Munson v. Del Taco, supra,* 46 Cal.4th at p. 675.) The Unruh Civil Rights Act is similar to the DPA because it prohibits discrimination against disabled persons. However, it is broader in scope in that it also "applies to many more types of discrimination" than the DPA. (*Munson,* at p. 675.)

## DISPOSITION

The judgment is affirmed.

Respondents are awarded their costs on appeal.

Richli, J., and Gaut, J., concurred.