Filed 4/26/16  Romasanta v. Harcourt CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ANTONIO R. ROMASANTA, as General Partner, etc.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PERRI V. HARCOURT,<br><br>    Defendant and Respondent. | 2d Civil No. B260248<br>(Super. Ct. No. 225061)<br>(Santa Barbara County) |

A beneficiary of two trusts petitioned to amend the trusts and to have herself appointed as trustee.  The corpus of the trusts consists almost entirely of limited partnership interests.  The general partner petitioned to have himself declared an interested person pursuant to Probate Code section 48.[1]  He sought to oppose the beneficiary's petition on the ground that the trustor made a contract with him that the trusts would have an institution appointed as successor trustee.  The trial court denied the general partner's petition.  He appeals.  We affirm.

                                                    FACTS

Antonio Romasanta and Donald Harcourt were general partners in Islay Investments and Tomado Investments, both of which are limited partnerships (hereafter

---

[1] All statutory references are to the Probate Code.

collectively the "Partnership").  The Partnership owns residential, commercial and self-storage real properties worth in excess of $100 million.

The Partnership agreement provides in part:  "No Partner, without the prior written consent of the other Partners, may sell or assign his interest or any portion of his interest in this partnership to any other person."

Harcourt's wife, Perri Harcourt, agreed to be bound by the provisions of the Partnership agreement.[2]

In 1979, paragraph 19 of the Partnership agreement was amended to provide that in the event of the death of a general partner, "he shall then occupy the status of a limited partner," and the surviving general partner shall continue as the general partner.  Perri gave her written consent to the amendment.

In July of 1995, Harcourt was diagnosed with cancer.  A little over a month later, in August 1995, the partners again amended paragraph 19 of the Partnership agreement to provide that the surviving spouse may obtain a loan from the Partnership on such terms as the estate or trustee and the surviving partner shall agree.  The loan would be for the payment of death taxes.

On August 25, 1995, Harcourt created two trusts naming Perri, their children and his children from a prior marriage as beneficiaries.  Almost the entire corpus of the trusts was composed of Harcourt's Partnership assets.

The trusts provided, in part:

"If DONALD H HARCOURT shall fail or cease to act as Trustee, then R. BRUCE MACKENZIE and PETER W. NEWMAN are hereby appointed as Successor Co-Trustees in his place.  If either R. BRUCE MACKENZIE or PETER W. NEWMAN shall fail or cease to act as a Successor Co-Trustee, then RICHARD A. GANT is hereby appointed as Successor Co-Trustee in the place of the one who steps down.

"1.  In the event that only one or none of the above named individuals are available to serve, then DONALD H. HARCOURT appoints SANTA BARBARA

---

[2] We hereafter use Perri Harcourt's first name for clarity and intend no disrespect.

2.

BANK & TRUST as Successor Trustee to serve with the one remaining individual or, if neither are able, to serve alone as the Successor Institutional Trustee. If SBB&T no longer exists, then a court of competent jurisdiction shall appoint a bank or trust company or other similar corporate entity qualified to act in the capacity of a trustee under the laws of the State of California as Successor Institutional Trustee. However, if there exists a successor institution to SBB&T, the Settlor requests that the court give serious consideration to the appointment of such successor institution, provided it otherwise qualifies to serve.

"3. PERRI V. HARCOURT is given the power to remove, from time to time, any acting Successor Co-Trustee, upon sixty (60) days written notice to such acting fiduciary and, if no successor is named herein, upon appropriate application to a court of competent jurisdiction to select a Successor Co-Trustee. In removing an individual Successor Co-Trustee, she shall only have the power to act with cause; in removing a corporate Successor Co-Trustees, she shall have the power to act without cause. Thus, PERRI V. HARCOURT shall have the power to remove an acting individual or corporate fiduciary but not the power to appoint his or its successor. However, in the appointment of any such successor or successors, it is DONALD H. HARCOURT's request that the court will hear and be guided by PERRI V. HARCOURT's suggestions as to the appointment."

Harcourt died in January 1997. He and Perri were married for 19 years. His will dated January 4, 1996, left his estate to the trusts. The trusts are limited partners of the Partnership. Romasanta is the sole general partner.

*Petition for Modification*

In July 2014, Perri filed a petition to approve a modification of the trust and to have herself appointed as successor trustee. Perri alleged that the trustee's fees were averaging $235,525 per year. Because the assets of the trust are composed of limited partnership shares, there is nothing for the trustees to do that justifies such fees. She alleges she has the consent of all trust beneficiaries for the modifications.

3.

*Romasanta's Petition*

Romasanta filed a request to file objections to Perri's petition and to petition for appointment of an institutional successor trustee. Romasanta claimed that his standing as an interested party is based on a contract between himself and Harcourt. The alleged contract provided that the trusts would always have an institutional trustee.

Romasanta filed an affidavit in support of his motion. Romasanta declared that he met Harcourt in 1962. They were close personal friends and business partners until his death in January 1997. Harcourt had a Bachelor of Science in Electrical Engineering from Stanford. Romasanta described Harcourt as "a particularly detail-oriented and methodical individual," and that "he paid particular attention to detail and minutia in everything he did. . . ." Romasanta said Harcourt had "considerable familiarity" with trusts. Harcourt served as trustee of family trusts and as co-trustee of his mother's trust valued at $10,000,000.

Romasanta described himself as having been licensed to practice law in California since 1961. He has an LLM degree in tax from New York University. During the course of his career, he has drafted numerous partnership agreements and has been involved in a number of sophisticated transactions involving partnerships and trusts.

Romasanta declared that after Harcourt was diagnosed with cancer, they had numerous discussions about his estate plan and how it would affect the Partnership. During those discussions, Romasanta received continuing assurances from Harcourt that "as General Partner[,] [Romasanta] would have an institutional trustee to work with . . . . [Harcourt] kept his part of the agreement as reflected in the Trusts and [Romasanta] agreed to the partnership modification regarding loans." To implement the agreement, the parties executed the August 1995 amendment to paragraph 19 of the Partnership agreement. Harcourt specifically agreed that he would appoint an institution as successor trustee and would not appoint Perri or his children. Romasanta stated, "I believe that by discussing with me and agreeing upon his successor trustee plan, [Harcourt], in essence, granted me standing to participate in any proceeding to dispense with the institutional trustee position."

Romasanta presented documents in addition to the trusts themselves and the 1995 Partnership agreement amendment. He claims the documents evidence the existence of a contract to appoint an institutional trustee.

Romasanta submitted a copy of Harcourt's will where Harcourt exercised a power to appoint the trustees of his mother's trust. The will states:

"I hereby appoint PERRI V. HARCOURT and PETER W. NEWMAN as the successor co-trustees of the Frances M. Harcourt 1983 Trust. Further, upon the death or resignation of PETER W. NEWMAN, I appoint RICHARD A. GANT as his successor co-trustee. Upon the death or resignation of PERRI V. HARCOURT or PETER W. INEWMAN and/or RICHARD A. GANT, I appoint SANTA BARBARA BANK & TRUST to serve with the remaining individual co-trustee as the institutional successor co-trustee to my mother's said trust. At no time will an individual co-trustee serve alone. Upon the death or resignation of the last individual co-trustee, then SANTA BARBARA BANK & TRUST will continue to serve as the sole trustee of the Frances M. Harcourt 1983 Trust.

Perri wrote a letter to Romasanta dated February 24, 2014. The letter stated, in part: "Don [Harcourt] agreed not to dissolve the partnership prior to his death because it was in the best interest of both parties to have the partnership continue to benefit both families and the employees of Islay Investments. During that time, you agreed to be the managing partner of the company to insure proper and necessary income to your and Don's families. Your severe reduction of distributions while building huge and disproportionate cash reserves has created undue hardship to me and my family and thus you are not fulfilling the promise you made to my husband and your partner. Clearly you have a rationale for your actions but there is no rationale for breaking your agreement with Don and in turn, with me."

Finally, Romasanta submitted portions of Perri's deposition in which she testified:

5.

"[Perri:]  He [Harcourt] told me that Bruce MacKenzie and Peter Newman were going to be the trustees and that Dick Gant would be a successor trustee, . . . later the bank would be the trustee, and . . . we discussed that.

"[Q:]  All right.  And what was your response?

"[Perri:]  My response was . . . [¶] . . . I thought it was great."

Perri testified in another deposition:  "[I]f Don had wanted me to be the trustee, he would have made me one.  Well, I never wanted to be one, ever."

The trial court denied Romasanta's petition and granted Perri's petition.

DISCUSSION

*I*

Perri contends the appeal is moot because a reversal would not grant Romasanta any relief.

Perri points out that Romasanta did not appeal the trial court's order granting her petition, and the order has long since become final.  But the trial court's denial of Romasanta's petition to be designated an interested party means he had no standing to appeal the order granting Perri's petition to be named trustee.  One must be a party to appeal.  (See Code Civ. Proc., § 902 [an "aggrieved party" may appeal]; *County of Alameda v. Carlson* (1971) 5 Cal.3d 730, 736.)  The only order Romasanta can appeal is the denial of his petition to be named an interested person in the instant appeal.  If he would prevail, he would have a remedy to file his own petition to appoint an institutional trustee.

Perri also argues this appeal is moot because Romasanta has filed a parallel action in superior court for declaratory relief and specific performance.[3]  Romasanta asks the court for an order to specifically enforce a contract requiring an institutional trustee for the trusts.  But Perri points to no final judgment or order in that case.  There is

---

[3] We grant Perri's motion to take judicial notice of Romasanta's first, second and third amended complaints in *Romasanta v. Harcourt*, Santa Barbara Superior Court, Case No. 1469167, filed August 5, 2015.  We deny Perri's second motion for judicial notice filed February 29, 2016.  We deny Romasanta's request to take judicial notice, filed October 19, 2015, as irrelevant.

6.

nothing to prevent us from giving any relief that may be warranted in this case. The appeal is not moot.

*II*

Romasanta contends the trial court erred in not designating him an interested person.

Section 15660, subdivision (d) provides that an "interested person" may petition the court to appoint a successor trustee.

Section 48 provides: "(a) Subject to subdivision (b), 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. [¶] (2) Any person having priority for appointment as personal representative. [¶] (3) A fiduciary representing an interested person. [¶] (b) The meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."

Romasanta claims the standard of review is de novo. He relies on *Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 366, where the court concluded that the trustor of an irrevocable trust has standing to reform the trust to cure a drafting error. But *Bilafer* did not concern section 48. Instead, the court stated it decided standing under the common law. (*Bilafer*, at p. 371, fn. 7.)

Cases decided under section 48 apply the abuse of discretion standard of review. (See *Estate of Sobol* (2014) 225 Cal.App.4th 771, 782, and cases cited therein.) Indeed, the broad power given to the court in subdivision (b) of the section convinces us the abuse of discretion standard is correct. In this case, however, it does not matter. Under either standard of review, the result is the same.

After receiving numerous filings in this matter, including Romasanta's evidence in support of his claim to standing, the trial court found that Romasanta lacked standing. Implicit in that order was a finding that Romasanta's evidence did not support his claim.

7.

Romasanta argues that he qualifies as an interested person by virtue of a contract Harcourt made with him that the successor trustee of the trusts would be an institutional trustee. Assuming such a contract would be sufficient to give Romasanta standing, the trial court did not find evidence of a contract.

On appeal, Romasanta claims the consideration he gave in exchange for Harcourt's promise was his consent to the transfer of Harcourt's partnership interest into the trusts. Romasanta's affidavit in support of his petition appears to state the consideration was the August 1995 amendment to the Partnership agreement. Because the trial court did not credit the existence of any contract concerning a successor trustee, the discrepancy is inconsequential.

Romasanta attempts to prevail by viewing the evidence in a light most favorable to himself. In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*)

Romasanta's evidence of a contract rests solely in his affidavit. He purports to recall conversations that took place almost 20 years ago. By Romasanta's own account, the partners were highly sophisticated and experienced in partnership agreements and trusts. They must have understood that a trust can be amended and the trustees replaced. Romasanta's affidavit does not claim otherwise. Romasanta declares that after Harcourt was diagnosed with cancer, they discussed his estate plan and amended paragraph 19 of the Partnership agreement. Yet they never expressly stated the alleged contract anywhere in writing.

Perri's letter to Romasanta dated February 24, 2014, states Harcourt agreed not to dissolve the partnership in exchange for Romasanta's agreement to provide necessary income to Harcourt's family. But the letter does not suggest a contract providing that a successor trustee would be an institutional trustee.

The other evidence that Romasanta relies on at best does nothing more than confirm what Perri does not contest: that Harcourt intended an institutional trustee; that

8.

he did not intend for Perri to be a trustee; and that initially Perri did not want to be a trustee. That is why Perri petitioned to amend the trust rather than enforce it. All the evidence shows is Harcourt's unilateral intent. It does not show a contract under which an institutional trustee must be appointed. Nor, for that matter, does it show that Harcourt intended to give Romasanta any say over the administration of the trusts. Instead, the trust gives Perri a say over the appointment of a successor trustee.

Romasanta argues Perri failed to rebut the evidence that he had a contract with Harcourt. But the argument confuses uncontradicted evidence with credible evidence. The trier of fact is entitled to reject even uncontradicted evidence as not having sufficient credibility. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.) Here the trial court found there was insufficient evidence of a contract.

Romasanta argues for the first time in his reply brief that the partnership agreement itself prohibits the appointment of a new trustee without his consent. Romasanta points to the provision of the partnership agreement that prohibits a partner from transferring his partnership interest without the other partner's prior written consent. Romasanta cites *Portico Management Group, LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473, for the proposition that a trust is not an entity and that legal title to the trust property is held by the trustee. Thus he concludes that the substitution of a trustee is a transfer of an interest in the partnership that requires his consent.

Points raised for the first time in the reply brief will ordinarily not be considered. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, p. 790.) In any event, even had the issue been properly raised, it would have been unavailing.

Romasanta conceded at oral augment that a provision prohibiting the transfer of a partnership interest without the other partner's consent is common in partnership agreements. (See 7 California Legal Forms: Transaction Guide (2010, Matthew Bender) ch. 15, § 15.201[2].) Yet Romasanta cites no case that has ever applied such a provision to the substitution of a trustee. *Portico*, on which Romasanta relies, holds nothing more than that a judgment against a trust alone without the trustees is unenforceable.

9.

It is true the trustee has legal title to the trust assets.  But the legal title confers no beneficial interest.  Instead, the trustee must administer the trust solely in the interest of the beneficiaries.  (§ 16002, subd. (a).)  The substitution of a trustee is simply not the equivalent of a transfer of an interest in the partnership.  Romasanta is still the general partner with all the rights and power of a general partner.  The interest in the trust is still a limited partnership.

The judgment (order) is affirmed.  Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


                                        GILBERT, P.J.
We concur:



        PERREN, J.



        TANGEMAN, J.




10.

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Price, Postel & Parma, LLP, Timothy E. Metzinger for Plaintiff and Appellant.

Mullen & Henzell, LLP, Jana S. Johnston, Stephen N. Yungling for Defendant and Respondent.