Filed 6/28/16  Alioto v. Manalo CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANTHONY J. ALIOTO, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIA CHRISTINA MANALO,<br><br>    Defendant and Appellant. | A143926<br><br>(City & County of San Francisco<br>Super. Ct. No. PTR-14-298002) |

The probate court granted trustee Anthony J. Alioto's petition for modification of a trust to correct a drafting error and Maria Christina Manalo, a trust beneficiary, appeals. Manalo contends that the trustee did not have standing to bring an action to modify the trust; that she was wrongly denied a trial; that extrinsic evidence was wrongly admitted to construe the trust; and that the probate court's construction of the trust is incorrect. We shall affirm the probate court's order modifying the trust.

**Statement of Facts**

Frank Anthony Alito created a revocable living trust in 1999 and restated its terms in 2010. He amended the restated trust twice, once in September 2011 and again in June 2012. He died in October 2012.

The beneficiaries of the trust are the trustor's adult children, Nunzio and Jennifer; the trustor's former wife, Suzanne Alioto, who is entitled to alimony pursuant to a dissolution decree; and the trustor's long-term companion, Maria Christina Manalo. The trustor's brother, Anthony Joseph Alioto, is the successor trustee.

1

The trust provides that some assets are to be distributed to the beneficiaries upon the trustor's death and other assets are to be held in two subtrusts with income to the beneficiaries. One subtrust holds common stock in the Nunzio Corporation for the benefit of the trustor's children. The other subtrust holds a one-half interest in F and A Properties, a general partnership, for the benefit of Manalo and the trustor's ex-wife.[1] Payment from the F and A Properties subtrust to the ex-wife are "specifically restricted to those alimony payments as provided by court order of dissolution." Payment to Manalo "shall be made in the same manner and in accordance with the same standard of living as [the trustor] may have provided in the past; adjusted as necessary by circumstances and inflation" with a stated minimum annual amount, payable monthly. Any net income in excess of the payments to the ex-wife and Manalo is paid to the children and the children are the successor beneficiaries after payments are no longer due the ex-wife and Manalo.

The terms of the restated trust of 2010 and the amended trust of 2012 differ in the distribution of assets and in the stated minimum amount of income allotted to Manalo from the F and A Properties subtrust. As to the distribution of assets, the 2010 trust instrument provided Manalo with a life estate in a California Street condominium or, if she chose to reside elsewhere, $200,000 from the unit's sale proceeds with the remainder to the children. The 2012 amendment removed Manalo's life estate option and directed sale of the condominium with Manalo to receive $200,000 from the sale proceeds and the remainder to the children. The 2012 amendment also provided additional assets to Manalo. She was given all personal property not specifically bequeathed, whereas the 2010 trust distributed this property to the children. Manalo was also given the trustor's interest in a general partnership known as 1395 Golden Gate Avenue, an asset not mentioned in the 2010 trust.

Concerning the F and A Properties subtrust, the 2010 trust document provided support payments to Manalo at a minimum amount of $50,000 annually for life. The 2012 amendment changed the support payments to a minimum amount of $75,000

---

[1] The full text of these provisions are set out later in the opinion.

annually for five years from the date of the trustor's death. While the 2012 amendment changed the time period of minimum support payments from life to five years, there was no amendment to a subsequent paragraph stating: "Upon the death of Maria Christina Manalo and the expiration of the payment of alimony . . . all the net income shall be paid equally to or for the benefit of my two children." The trustee claimed that the failure to amend the subsequent paragraph was a drafting error and that the trustor's intent was to pay subtrust income to Manalo for five years with all income paid to the children after that five-year period. The trustee maintained that the trust should be modified to provide that all net income shall be paid to the children "[f]ollowing five years from the date of [trustor's] death" rather than "[u]pon the death of" Manalo.

In August 2014, the trustee filed a petition to modify the trust to correct the claimed drafting error and submitted a declaration from the attorney who drafted the amendment. (Prob. Code, § 17200, subd. (b)(13).) The attorney declared that the trustor "expressed his concern of the effect of Ms. Manalo receiving the income from the F and A Properties partnership for life as his children would not receive any of its income until Ms. Manalo's death which could be in twenty years or more." The trustor "wanted to provide Ms. Manalo with $75,000 of annual income from the F and A Properties partnership for five years as he wanted his children to receive the benefits of this partnership with his brother in a timely fashion."

Manalo filed a response in which she opposed admission of the attorney's declaration and modification of the trust. Manalo argued that the amended trust was not ambiguous and interpreted it to provide her with lifetime support at her established standard of living with a guaranteed minimum of $75,000 for five years. Any net income in excess of the annual payment to Manalo was to be paid to the children but, she maintained, the children were not to become successor beneficiaries entitled to all income from the subtrust until Manalo's death. Manalo also asserted that the amendment reducing the time period of a guaranteed payment from life to five years was in recognition of the fact that alimony payments to the trustor's ex-wife would expire at the

3

end of the five-year period so Manalo "would not need this extra protection" of a guaranteed minimum.

The court held a hearing on the matter at which no court reporter was present and no witnesses were called to testify. The court took the matter under submission and asked the parties to submit proposed orders, which they did.[2] The court then issued an order granting the trustee's request for modification of the trust. The paragraph providing "Upon the death of Maria Christina Manalo and the expiration of the payment of alimony . . . all the net income shall be paid equally to or for the benefit of [the trustor's] two children" was modified to read: "*Following five years from the date of* [*the trustor's*] *death* and the expiration of the payment of alimony . . . all the net income shall be paid equally to or for the benefit of [the trustor's] two children." (Italics added.) Manalo timely filed notice of appeal on December 16, 2014.

## Discussion

Manalo raises a number of claims on appeal, both procedural and substantive. We discuss these claims in turn.

1. *Trustee's standing to seek modification of the trust.*

As an initial matter, Manalo contends that only beneficiaries, not trustees, have standing to bring an action to modify a trust agreement. She acknowledges that a trust agreement, like any other contract, may be reformed and revised under California Civil Code section 3399 to correct a drafting error. She argues that the statute permits revision on the application of "a party aggrieved," and argues that a trustee who lacks a pecuniary interest in the trust is not a party aggrieved. Her interpretation of the Civil Code is

---

[2] Manalo has filed a motion to augment the record with her proposed order and cover letter submitted to the court. (Cal. Rules of Court, rule 8.155.) The trustee opposes the motion because the proposed order and letter were not filed in the superior court. But the proposed order was expressly requested by the court, which received proposed orders from both Manalo and the trustee. A record on appeal is properly augmented with "[a]ny document filed *or lodged* in the case in superior court." (Cal. Rules of Court, rule 8.155(a)(1)(A).) The motion to augment is granted.

4

questionable but, in any event, there is clear authority, apart from the Civil Code, allowing a trustee's action to modify a trust instrument.

The Probate Code authorizes a trustee to bring a petition for an order construing a trust instrument. (E.g. *Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 449-450.) Probate Code section 17200, subdivision (a) expressly provides that a "*trustee or beneficiary* of a trust may petition the court . . . concerning the internal affairs of the trust." (Italics added.) "Proceedings concerning the internal affairs of a trust include, but are not limited to," proceedings "[a]pproving or directing the modification or termination of the trust." (Prob. Code, § 17200, subd. (b)(13).) The list of "grounds for a petition concerning the internal affairs of a trust . . . is not exclusive and is not intended to preclude a petition for any other purpose that can be characterized as an internal affair of the trust." (Cal. Law Revision Com., com. (1990) Prob. Code, § 17200.) Common law also recognizes a trustee's right to seek construction and modification of a trust agreement. "California courts have long had the equity power to modify the terms of a trust where such modification is necessary to preserve the trust or to serve the original intentions of the trustor." (*Stewart v. Towse* (1988) 203 Cal.App.3d 425, 428.) The power to modify includes the "equitable power to reform an irrevocable trust where a drafting error defeats the trustor's intentions." (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 369.)

2. *Right to trial in probate court.*

Manalo next contends, with little elaboration, that she was "entitled to a trial on the issues raised by the pleadings." But "[t]here is no right to a jury trial in proceedings . . . concerning the internal affairs of trusts." (Prob. Code, § 17006.) Nor is an evidentiary hearing with oral testimony always required. "An affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding." (Prob. Code, § 1022.) While the proceeding here was contested, it was not contested on factual matters. Manalo's opposition to the trustee's petition neither asserted a need for trial nor proffered a factual issue deserving of trial. She argued that the trustee did not have

standing to seek modification of the trust or, alternatively, that the trust is unambiguous and should be interpreted without the use of extrinsic evidence. She claimed the "scrivener's declaration is inadmissible"; she did not dispute its factual allegations.

A probate court must grant a request for an evidentiary hearing on contested factual matters. (*Estate of Lensch* (2009) 177 Cal.App.4th 667, 676; *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1308-1310.) But no request was made here and no contested factual matters were presented. Manalo failed to assert, much less demonstrate, that there were factual matters in dispute material to the determination of the petition that turn on the credibility of witnesses. It was not until after submission of the case, in a letter accompanying her proposed order, that Manalo stated: "In the event that you should rule that the [trustee] does have standing a trial will be required. I would suggest setting a trial date which would give both parties sufficient time to interview witnesses and complete discovery." Manalo's informal suggestion of a trial date — charitably construing it as a request for an evidentiary hearing — was untimely, since the matter had already been submitted. Moreover, the general reference to unnamed witnesses and unspecified discovery without identifying any factual matters in dispute failed to raise an issue warranting an evidentiary hearing.

3. *Admission of extrinsic evidence.*

Similarly unavailing is Manalo's claim that the probate court improperly relied upon extrinsic evidence—the drafting attorney's declaration—to modify the trust. As a preliminary matter, it is not clear from the record that the probate court actually relied upon the attorney's declaration. The hearing was not transcribed and the order modifies the trust's terms without stating whether the revision is based upon the attorney's declaration, a reconciliation of the trust's terms, or both. The trustee argues that we should presume the court sustained Manalo's objection to the declaration and modified the trust based upon a reading of the trust agreement alone. However, an appellate court's usual practice when a trial court fails to rule expressly on specific evidentiary objections, at least as regards summary judgment motions, is to "presume[] that the objections have

6

been overruled, the trial court considered the evidence in ruling on the merits of the . . . motion, and the objections are preserved on appeal." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) We shall follow that procedure here and consider Manalo's contention that the attorney's declaration was improperly admitted.

The contention fails on the merits. "In California, extrinsic evidence is generally admissible to correct errors in documents," including trusts. (*Estate of Duke* (2015) 61 Cal.4th 871, 887.) "In interpreting a document such as a trust, it is proper for the trial court in the first instance and the appellate court on de novo review to consider the circumstances under which the document was made so that the court may be placed in the position of the testator or trustor whose language it is interpreting, in order to determine whether the terms of the document are clear and definite, or ambiguous in some respect. [Citation.] Thus, extrinsic evidence as to the circumstances under which a written instrument was made is admissible to interpret the instrument, although not to give it a meaning to which it is not reasonably susceptible." (*Wells Fargo Bank v. Marshall, supra,* 20 Cal.App.4th at p. 453.)

"An ambiguity in a written instrument exists when, in light of the circumstances surrounding the execution of the instrument, ' "the written language is fairly susceptible of two or more constructions." ' " (*Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 74, quoting *Estate of Russell* (1968) 69 Cal.2d 200, 211.) The trust here is ambiguous. It provides Manalo minimum support payments of $75,000 annually for five years from the date of the trustor's death yet also provides that the successor beneficiaries do not receive the net income until the death of Manalo. As the trustee notes on appeal, the trust terms are capable of several conflicting interpretations concerning disposition of subtrust income after the fifth anniversary of the trustor's death. Thus extrinsic evidence was properly admitted. "Where a trust instrument contains some expression of the trustor's intention, but as a result of a drafting error that expression is made ambiguous, a trial court may admit and consider extrinsic evidence, including the drafter's testimony, to resolve the ambiguity and give effect to the trustor's intention as expressed in the trust instrument." (*Ike, supra,* at p. 74.)

7

Manalo argues that the declaration may not be considered because it relates the trustor's oral declarations of intent. The Probate Code once limited extrinsic evidence to the circumstances surrounding execution of a will, "excluding the oral declarations of the testator as to his intentions." (*Estate of Salmonski* (1951) 38 Cal.2d 199, 214, construing former Prob. Code, § 105.) The Probate Code no longer contains that limitation and, even when it did, the limitation applied only " 'to the mere incidental fugitive utterances or declarations of intent, as distinguished from the specific instructions as to testamentary disposition.' " (*Estate of Taff* (1976) 63 Cal.App.3d 319, 325.) It has always been held that "oral declarations made by a testator to the scrivener of the will are admissible to resolve a latent ambiguity." (*Ibid.*; accord *Estate of Dominici* (1907) 151 Cal. 181, 185.)

4. *Construction of the trust.*

Manalo's final contention is that the trust agreement was not properly construed by the probate court. "In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it." (*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168.) We therefore begin with the terms of the trust, both in the original trust instrument and in the disputed amendment.

The 2010 trust instrument provides, in relevant part: "4. I give in trust my one-half (1/2) (50%) interest in F and A Properties . . . . [¶] a. This trust is for the benefit of Maria Christina Manalo, my companion during my lifetime and Suzanne Alioto, my former spouse. [¶] b. The trustee is authorized to support or continue to support the above persons whom I have agreed to support or to whom I owe a duty of support, more specifically Maria Christina Manalo, my companion and Suzanne Alioto, my former spouse. Payment shall be made in the same manner and in accordance with the same standards of living as I may have provided in the past; adjusted as necessary by circumstances and inflation as to Maria Christina Manalo, my companion. [¶] Payments to Maria Christina Manalo shall be a minimum of $50,000 annually, payable monthly for the life of Maria Christina Manalo. As to Suzanne Alioto, it is specifically restricted to

those alimony payments as provided by a court of dissolution. [¶] c. Upon the death of Maria Christina Manalo and the expiration of the payment of alimony provided for by that decree of distribution to Suzanne Alioto; all the net income shall be paid equally to or for the benefit of my two children . . . . [¶] . . . [¶] d. If there remains any net income during the payment as directed in Paragraph b herein, then said net income shall be paid to or for the benefit of my children, Nunzio N. Alioto and Jennifer Alioto, by right of representation."

The 2012 amendment left untouched most of paragraph 4, deleting only subparagraph 4b and replacing the second clause with the following provision: "Payments to Maria Christina Manalo shall be a minimum of *$75,000* annually, payable monthly for *the period of five (5) years from the date of my death*. As to Suzanne Alioto, it is specifically restricted to those alimony payments as provided by a court of dissolution." (Italics added.)

An ambiguity arises because the amendment revised subparagraph 4b to change the time period of the designated payments to Manalo from her lifetime to five years but left unchanged the original subparagraph 4c directing payment to the successor beneficiaries only upon Manalo's death. It is not clear what the trustee is to do with the subtrust income after the fifth anniversary of the trustor's death. Several possible interpretations have been suggested by the parties: (1) Manalo receives no further income payments and the trustor's children receive the income; (2) the trustee retains the income until Manalo dies, at which time the children receive the accumulated income; or (3) Manalo receives income for the rest of her life, without a guaranteed minimum.

The probate court resolved the ambiguity in favor of the first interpretation and modified subparagraph 4c to provide payment to the successor beneficiaries following five years from the date of the trustor's death. Viewing the trust instruments as a whole, the probate court adopted the most reasonable construction of those documents. The trustor's intention before the 2012 amendment was clear. Manalo was to receive at least $50,000 a year for the duration of her life and the trustor's children would receive all the income upon her death. In 2012, the trustor changed the trust in several ways. First, he

9

increased Manalo's minimum annual income from $50,000 to $75,000 but deleted the words "for the life of Maria Christina Manalo" and replaced them with "for the period of five (5) years from the date of my death." Second, he deleted the provision giving Manalo the option of a life estate in a condominium and, instead, directed sale of the property with $200,000 of the proceeds to Manalo. Third, he gave Manalo additional assets—all personal property not specifically bequeathed, whereas the 2010 trust instrument distributed this property to the children, and the trustor's interest in the Golden Gate Avenue partnership, an asset not mentioned in the 2010 trust document. These various dispositions suggest that the trustor's intention in 2012 was to provide sufficiently for Manalo by increasing her immediate income and providing additional assets while also limiting the length of time she would receive income from the subtrust to assure payments to his adult children during their lifetimes.

The drafting attorney's declaration corroborates this interpretation. The attorney states that the trustor, in amending the trust, was concerned that if Manalo received subtrust income for life then "his children would not receive any of its income until Ms. Manalo's death which could be in twenty years or more." However, the trustor "was also concerned with providing sufficient funds for Ms. Manalo and again expressed his desire to give her his interest in the Golden Gate Partnership outright on his death" as "extra funds since she would be receiving the income from F and A Properties partnership for 5 years instead of for life."

The probate court thus properly modified the trust amendment to clarify its terms and to fully effectuate the trustor's apparent intentions.

**Disposition**

The order is affirmed.

10

                                                    _____
                                                    Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.

11