Filed 7/26/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT SAURMAN, as Successor in Interest, etc., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PETER'S LANDING PROPERTY OWNER, LLC, <br><br> Defendant and Respondent. | G061561 <br><br> (Super. Ct. No. 30-2017-00924201) <br><br> O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Deborah C. Servino, Judge. Reversed in part and affirmed in part. Motion for sanctions denied.

Charles S. Roseman & Associates, Charles S. Roseman and Richard D. Prager; Williams Iagmin and Jon R. Williams for Plaintiffs and Appellants.

Singleton Schreiber and Benjamin I. Siminou as Amicus Curiae for Consumer Attorneys of California on behalf of Plaintiffs and Appellants.

Haight Brown & Bonesteel, Robert Rucci, Arezoo Jamshidi and Kaitlyn A. Jensen for Defendant and Respondent.

\*        \*        \*

In this case we hold that a successor in interest of a disabled person who was allegedly killed by an unlawful barrier in a place of public accommodation has standing to commence a lawsuit for injunctive relief (i.e., barrier removal) in a California superior court under Title III of the Americans with Disabilities Act (the ADA).[1]

Kathleen Saurman suffered from medical conditions that made it difficult for her to walk. Kathleen was celebrating her 60th birthday with her husband Robert at a restaurant.[2] While Kathleen was walking to their table, she fell on a small stairway leading to a slightly elevated area of the dining room. Robert took Kathleen to a hospital, where she contracted a fatal infection after a surgery and died.

In a wrongful death lawsuit, Robert sued the restaurant's owner, who later sold the restaurant. In the instant lawsuit, Robert is suing both the former and the present restaurant owner, Peter's Landing Property Owner LLC ("Owner"), alleging ADA violations, as well as violations of state disability access laws: the Unruh Civil Rights Act (the Unruh Act), and the Disabled Persons Act (the DPA).

Owner filed a motion for summary judgment and a motion for sanctions against Robert's attorney for pursuing a frivolous lawsuit. The trial court granted both motions. Robert and his attorney filed this appeal.

The trial court granted Owner's summary judgment motion as to Robert's ADA cause of action because the court found Robert lacked standing to bring a lawsuit for injunctive relief. We disagree.

---

[1] This appears to be an issue of first impression, so we are ordering publication of this opinion. (See Cal. Rules of Court, rule 8.1105(c)(1).)

[2] We refer to the Saurmans by their first names; no disrespect is intended.

It appears that a successor in interest does not have standing *in a federal court* to bring an ADA claim for injunctive relief. (*City of Los Angeles v. Lyons* (1983) 461 U.S. 95, 101 (*Lyons*).) But whether or not a plaintiff has standing to commence an ADA claim in a California state court is determined by state law rather than federal law. (*Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 690.) In California, "a cause of action for or against a person is not lost by reason of the person's death." (Code Civ. Proc., § 377.20, subd. (a).)[3] "A cause of action that survives the death of the person entitled to commence an action . . . passes to the decedent's successor in interest." (§ 377.30.) Thus, we find Robert has standing to commence an ADA claim on Kathleen's behalf in the superior court.

The court granted Owner's summary judgment motion as to the state causes of action because Robert "submitted no evidence to show any act, omission, or error by [Owner] in relation to this action." We disagree.

The Unruh Act and the DPA allow plaintiffs to seek injunctive relief. Owner does not dispute that the restaurant is currently in the same condition as is it was at the time of Kathleen's fall; therefore, we find there is a triable issue of fact as to whether Owner is in current violation of the Unruh Act and the DPA, and Robert has standing as a successor in interest to seek to correct these violations.

Finally, the trial court granted Owner's motion for attorney sanctions, ordering Robert's attorney to pay Owner nearly $100,000 for pursuing what the court found to be frivolous claims. We find Robert's claims were not frivolous. Thus, we reverse that order.

In sum, we reverse the trial court's order granting Owner's

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

motion for summary judgment as to the federal ADA cause of action; reverse the court's order granting summary judgment as to the state disability access causes of action (the Unruh Act and the DPA); affirm the court's order granting summary judgment as to the "causes of action" for injunctive and declaratory relief; reverse the trial court's order of sanctions against Robert's attorney; and deny Owner's motion filed in this court for sanctions against Robert and his attorney for filing an allegedly frivolous appeal.

I

FACTS AND PROCEDURAL BACKGROUND

On September 14, 2014, Kathleen went to the Pelican Isle Waterfront Dining Restaurant (the restaurant) to celebrate her 60th birthday with Robert and two of their friends. As Kathleen was walking to their table, she fell on a small stairway leading to a slightly elevated area of the dining room. The next day, Kathleen underwent surgery for a broken hip. Four days later, Kathleen died from an infection. (*Saurman et al. v. Gnirob Capital Corporation* (Sept. 28, 2020, G057166) [nonpub. opn.].)

In April 2015, Robert filed a complaint against the restaurant's owner, Gnirob Capital Corporation et al. (Gnirob), for wrongful death (the wrongful death complaint). In April 2017, Robert filed a motion to amend the complaint, seeking to add additional causes of action, including a violation of the Unruh Act (Civ. Code, § 51) and a violation of the DPA (Civ. Code, § 54, et seq.).[4] The trial court denied the motion.

---

[4] A portion of the Civil Code, "currently consisting of sections 54 to 55.3, is commonly referred to as the 'Disabled Persons Act,' although it has no official title." (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 674, fn. 8 (*Munson*).)

4

In June 2017, Robert filed a separate action (the disability access complaint) against Gnirob and "Doe" defendants alleging four causes of action: a violation of the ADA; a violation of the Civil Code (the Unruh Act and the DPA); declaratory relief; and injunctive relief. This lawsuit is the subject of this appeal. Robert alleged Kathleen had suffered from immune disorders that impaired her mobility. Robert claimed Kathleen was denied full and equal access to the restaurant and its surrounding property (the Property). Robert alleged the Property had 22 barriers preventing access to disabled persons (e.g., inaccessible bathrooms, lack of accessible parking, a raised dining area that lacked an accessible route, etc.). Robert averred he is a "successor in interest (as defined in section 377.11 . . .) and succeeds to the decedent's interest in the action or proceeding."[5]

In October 2017, Gnirob filed a demurrer to the disability access complaint. Gnirob argued Robert lacked standing because none of four asserted claims survived Kathleen's death. The trial court overruled the demurrer as to the first cause of action (the Unruh Act and DPA claims). The court sustained the demurrer without leave to amend as to the remaining causes of action.

In August 2017, Owner incorporated as an LLP and acquired the Property. It is an undisputed material fact that Owner had no connection to the Property prior to this date.

In August 2018, a jury returned a verdict in the wrongful death case. The jury found the former restaurant owner Gnirob negligent, but

---

[5] A "'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action . . . ." (§ 377.11.)

found its negligence was not a substantial factor in causing Kathleen's death. Robert filed a motion for new trial, which the trial court granted. The court's ruling on the new trial was later affirmed on appeal.[6] (*Saurman et al. v. Gnirob Capital Corporation, supra,* G057166.)

In May 2019, Robert amended the disability access complaint to add Owner as a defendant. In August 2021, Owner filed a motion for judgment on the pleadings (the action had been stayed). In November 2021, the trial court denied the motion.

In January 2022, Owner filed a motion for $150,000 in sanctions, arguing Robert's counsel had pursued "a frivolous complaint against Owner when such claims lacked any legal or evidentiary support . . . ."

In February 2022, Robert's counsel filed an opposition to the motion for sanctions. Counsel argued the claims "are warranted either by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law."

In February 2022, Owner filed a motion for summary judgment. As to the ADA claim, Owner stated it "only allows for injunctive relief." Owner argued Robert, "(as the successor to Decedent) lacks standing to bring any claims seeking injunctive relief." As to the Unruh Act claim, Owner argued it was not liable "as a matter of law because . . . at the time [Kathleen] visited the Property in 2014, Owner did not own, operate, lease, or have any connection, whatsoever, to the Property." Owner did not address Robert's DPA claim.

In April 2022, Robert filed an opposition to the motion for

---

[6] The record does not appear to reveal the current status of the wrongful death lawsuit.

6

summary judgment. Robert argued he had standing under California's survivorship statutes. Robert stated, "that the subject property remains in the same general condition as it existed from the time of [Kathleen's] fall." Owner did not dispute this material fact.

In April 2022, the trial court granted Owner's motion for summary judgment. As to the ADA claim, the court found: "The only remedy available to a private litigant under Title III, is injunctive relief. [Citations.] Claims for injunctive relief require that there exist a real or immediate threat of irreparable harm. [Citation.] The death of Kathleen Saurman rendered moot her claim for injunctive relief under the ADA, as there is necessarily no prospect of future injury to Kathleen Saurman."[7] As to the Unruh Act and DPA claims (Civ. Code, §§ 51, 52, 54, et seq.), the court ruled Robert "submitted no evidence to show any act, omission, or error by [Owner] in relation to this action." The court also granted the motion as to Robert's causes of action for declaratory and injunctive relief.[8]

In May 2022, the trial court granted Owner's motion for attorney sanctions in the amount of $98,852. (§ 128.7.) The court found Robert's disability access complaint as to Owner "was factually and legally frivolous." The court noted: "At the time of the incident, [Owner] did not own, operate, lease, or have any connection to the subject property." The court stated

_____

[7] As often occurs. the trial court appears to have conflated the terms "mootness" and "standing." (See *Arizonans for Official English v. Arizona* (1997) 520 U.S. 43, 68, fn. 22 ["The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)"].)

[8] We find that the trial court properly dismissed these two purported "causes of action." (See *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173 ["injunctive and declaratory relief are equitable remedies, not causes of action"].)

Robert's "counsel conceded he had no legal authority." The court rejected counsel's argument that Robert "'has a strong interest in having this novel issue resolved by the [Court of Appeal].'"

Robert filed a notice of appeal from the May 2022 order for sanctions "and all interlocutory orders merged into the Judgment." Owner subsequently filed a motion in this court asking for sanctions in the amount of $32,774.67 to be imposed against Robert and his counsel "for taking a frivolous appeal." (See § 907; Cal. Rules of Court, rule 8.276(a)(1).)

After briefing by the parties, this court received an application to file an amicus brief in support of Robert on behalf of the Consumer Attorneys of California (CAOC). The CAOC argued its "brief will assist the Court by exploring issues neither party has addressed." We granted the request and Owner filed a substantive opposition to the amicus brief.

II

DISCUSSION

Robert argues the trial court erred in granting Owner's motion for summary judgment and abused its discretion in ordering attorney sanctions. We agree.

Motions for summary judgment "provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) Because such motions involve pure questions of law, our review is de novo. (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.)

An award of attorney fees for pursuing purportedly frivolous

8

litigation is reviewed for an abuse of discretion. (*City of Rocklin v. Legacy Family Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 726–727.) However, there are varying degrees of deference within this standard of review. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) A "trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Ibid.*, fns. omitted.)

In this discussion, we analyze whether the trial court: (A) erred in granting Owner's motion for summary judgment as to the ADA claim; (B) erred in granting Owner's motion as to the state disability access claims (the Unruh Act and the DPA); and (C) abused its discretion in awarding Owner $98,852 in attorney sanctions.

## A. The ADA Claim

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." (*PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661, 674 (*Martin*).) "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" (*Id.* at p. 675.)

"To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I . . .), public services (Title II), and public accommodations (Title III)." (*Martin, supra*, 532 U.S. at p. 675, fns. omitted.) In relevant part, Title III of the ADA provides: "No individual shall be

9

discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a).)

Under Title III of the ADA, any person who has been subjected to discrimination or is about to be subjected to discrimination on the basis of his or her disability can bring a private right of action to enforce its provisions. (42 U.S.C. § 12188(a)(1).) A person can bring a lawsuit in either a federal court or a state court. (*Carolyn v. Orange Park Community Assn.* (2009) 177 Cal.App.4th 1090, 1097, fn. 4 [state courts exercise concurrent jurisdiction of lawsuits brought under the ADA].)

The only remedies available for a private right of action under Title III are injunctive relief, as well as the recovery of attorney fees and costs (i.e., no monetary damages). (*Reycraft v. Lee* (2009) 177 Cal.App.4th 1211, 1218; see also *Dorsey v. City of Detroit* (E.D.Mich. 2001) 157 F.Supp.2d 729, 733 ["Title III of the ADA does not provide for monetary damages or, concomitantly, a jury trial, when the action is brought by a 'person who is being subjected to discrimination'"].)

Under Title III of the ADA, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter." (42 U.S.C. § 12188(a)(2).) The court's order for injunctive relief can encompass the removal or alteration of any barriers that might similarly affect others with the plaintiff's particular disability. (*Steger v. Franco, Inc.* (8th Cir. 2000) 228 F.3d 889, 893–894 [a blind plaintiff could seek the

10

removal of barriers arguably affecting blind people in the defendant's business; however, that plaintiff could not also seek to remove other barriers in the business affecting disabled individuals who were not blind].)

The question of who can commence a private right of action under the ADA—standing—has been the subject of considerable litigation, although the United States Supreme Court has never directly addressed the issue in the context of a Title III claim. The question of standing in federal courts often comes up with reference to "testers," rather than actual patrons. (See, e.g., *Houston v. Marod Supermarkets, Inc*. (11th Cir. 2013) 733 F.3d 1323, 1332 [plaintiff's status as tester, rather than a bona fide patron, did not deprive him of standing under Title III of the ADA]; *Carello v. Aurora Policemen Credit Union* (7th Cir. 2019) 930 F.3d 830, 833 ["while tester status does not defeat standing, it does not automatically confer it either"].)

In all federal courts, the issue of standing "is rooted in Article III, which limits a federal court's power to the resolution of 'Cases' or 'Controversies.'" (*Carello v. Aurora Policemen Credit Union, supra*, 930 F.3d at p. 833.) "In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." (*Summers v. Earth Island Institute* (2009) 555 U.S. 488, 492.) "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit." (*Warth v. Seldin* (1975) 422 U.S. 490, 498.)

11

The case-or-controversy requirement of the federal Constitution has many aspects, but in the context of a party seeking injunctive relief in a federal court, it requires that the party be "likely to suffer future injury." (*Lyons, supra,* 461 U.S. at p. 105.) Specifically, a plaintiff requesting an injunction must "establish a real and immediate threat that he will again be" subjected to the challenged conduct. (*Ibid.*)

However, "state courts need not impose the same standing or remedial requirements that govern federal-court proceedings." (*Lyons*, *supra*, 461 U.S. at p. 113.) In *Lyons*, the Supreme Court explained that Article III standing principles precluded *a federal court* from granting injunctive relief to a man unlawfully choked by police (because he was not likely to be imminently injured again); however, the Court noted that the states have no such requirement and "may permit their courts to use injunctions to oversee the conduct of law enforcement authorities on a continuing basis." (*Ibid.*)

"We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or . . . a federal statute." (*Asarco Inc. v. Kadish* (1989) 490 U.S. 605, 617 [a plaintiff organization had standing to pursue an action challenging a federal law in state court, although it lacked standing to file the same action in federal court]; see also *Nike, Inc. v. Kasky* (2003) 539 U.S. 654, 661, fn. 2 ["Because the constraints of Article III do not apply in state courts . . . the California courts are free to adjudicate this case"].)

The subject of "whether or not a party has standing to bring an

ADA claim in state court is a question *of state law* rather than federal law." [9] (*New Jersey Citizen Action v. Riviera Motel Corp*. (N.J. Super Ct. App. Div. 1997) 686 A.2d 1265, 1271–1272 (*Riviera*), italics added.) "A plaintiff who fails to establish Article III standing to bring suit in federal court is not necessarily barred from pursuing the same [ADA] suit in state court." (*Advocates for Individuals with Disabilities, LLC v. 1548 Main, LLC* (D. Ariz., Nov. 28, 2016, No. CV-16-02169-PHX-DJH) 2016 WL 9155462, at * p. 3 ["state courts have concurrent jurisdiction over [ADA] claims and the state courts may decide whether Plaintiffs have sufficient standing to pursue them"]; accord *Limon v. Circle K Stores Inc*., *supra*, 84 Cal.App.5th at p. 690 [in a state court action alleging a violation of the federal Fair Credit Reporting Act, "'California courts are not bound by the "case or controversy" requirement of article III of the United States Constitution, but instead are guided by "prudential" [standing] considerations'" under state law].)

In *Riviera*, plaintiff was "an advocacy organization for the disabled." (*Riviera, supra,* 686 A.2d at pp. 1267–1268.) Plaintiff notified defendant motel that its "entrance barred access by wheelchair users, there was an absence of parking for the disabled, an absence of an accessible room and other architectural barriers." (*Id*. at p. 1268.) Plaintiff filed a lawsuit in a New Jersey state court alleging violations of the ADA as well as the state's own disability access laws. The parties entered into a stipulation agreeing to resolve plaintiff's claims, but defendant maintained plaintiff was not entitled to attorney fees and costs as to the ADA claims because the organization lacked standing. At the conclusion of a hearing, the trial court found

---

[9] We are not aware of any cases (nor have the parties cited any cases) in which any court has held that federal standing rules apply to ADA claims filed in state courts.

13

"plaintiff had standing to maintain the ADA action and awarded plaintiff counsel fees of $4,000 and costs of $366.20 for a total of $4,366.20. Defendant appealed." (*Id*. at p. 1268.)

The New Jersey state appellate court agreed with the trial court: "New Jersey courts take a broad and liberal approach to standing. [Citations.] 'In the overall we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of "just and expeditious determinations on the ultimate merits."' [Citation.] Thus, 'courts hold that where the plaintiff is not simply an interloper and the proceeding serves the public interest, standing will be found.'" (*Riviera, supra,* 686 A.2d at pp. 1271–1272.)

The rules for standing in California "'require a plaintiff to have a personal interest in the litigation's outcome.'" (*Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 370.) California law takes a broad approach to the issue of standing, routinely allowing personally interested litigants access to state courtrooms in a wide variety of legal contexts. (See, e.g., *Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, 618 [acknowledging that the Private Attorney General's Act has "broad standing rules"]; *Thompson v. Spitzer* (2023) 90 Cal.App.5th 436, 453 ["As our Supreme Court has explained, the purpose of taxpayer standing is to enable ""a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement"""]; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 948 [in a juvenile dependency proceedings California courts "liberally construe the issue of standing"]; *Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, 1389 ["Courts

14

have consistently given a broad interpretation to the standing provisions in Business and Professions Code"].)

The California requirements for obtaining an injunction are "less stringent than those imposed by federal law." (*Langford v. Superior Court* (1987) 43 Cal.3d 21, 36, fn. 6.)  "An injunction may be granted . . . :  [¶] (1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or *continuance of the act complained of*, either for a limited period or perpetually."  (§ 526, subd. (a)(1), italics added.)

"Where a prima facie case has otherwise been made out . . . , and in determining the availability of injunctive relief, the court must consider *the interests of third persons and of the general public*." (*Loma Portal Civic Club v. American Airlines, Inc.* (1964) 61 Cal.2d 582, 588, italics added; *Pacific Gas & Electric Co. v. Minnette* (1953) 115 Cal.App.2d 698, 709 ["The availability of injunction . . . depends upon the appropriateness of this remedy as determined by a comparative appraisal of all the factors of the case including . . . the interest of third parties and of the public"].)

In a California state court (unlike a federal court), the relevant question is not whether party seeking the injunction is likely to be injured again, but whether "there is a realistic prospect that *the party enjoined* intends to engage in the prohibited activity." (*Korean Philadelphia Presbyterian Church v. California Presbytery* (2000) 77 Cal.App.4th 1069, 1084, italics added.)  While the death of a person may render injunctive relief unnecessary as to that person, the relevant issue in California is whether there is a reasonable probability of the recurrence of the alleged wrongs.  (See *Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168, 184.)

15

California survivor laws provide that "a cause of action for or against a person is not lost by reason of the person's death." (§ 377.20.) "A cause of action that survives the death of the person entitled to commence an action . . . passes to the decedent's successor in interest . . . ." (§ 377.30.) Under California law, a "successor in interest has standing to bring any causes of action that the decedent himself could have asserted." (*Estate of Sanchez v. County of Stanislaus* (E.D.Cal., Nov. 14, 2023, No. 1:18CV-00977-ADA-BAM) 2023 WL 7612399, at * p. 29.)

The survival statutes "prevent the abatement of the cause of action of the injured person, and provide for its enforcement by or against the personal representative of the deceased." (*Grant v. McAuliffe* (1953) 41 Cal.2d 859, 864.) In California, "a survival action is not an independent cause of action, it is a procedural vehicle to ensure that 'a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period.'" (*Estate of Lopez v. Gelhaus* (N.D.Cal. 2016) 149 F.Supp.3d 1154, 1166–1167 [applying California survivorship laws, a federal court held that "when [Lopez] died, his right to assert a Fourth Amendment excessive force claim survived his death and may be asserted by his estate"].)

It is not necessary that a complete cause of action exist at the time of death in order for a person's rights to survive that may later mature into an actionable claim by the successor in interest. (*Carr v. Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881, 891.) It is likewise unnecessary that the action be instituted prior to the person's death. (See *Dunwoody v. Trapnell* (1975) 47 Cal.App.3d 367, 370.) However, "*the damages recoverable are limited to the loss or damage that the decedent sustained or incurred

16

before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement." (§ 377.34, subd. (a), italics added.)

Here, Robert alleged in the disability access complaint that Kathleen died as a result of a barrier in the restaurant in violation of the ADA. (See 42 U.S.C. § 12188(a)(1).) Robert commenced the lawsuit against the former owner Gnirob, but later amended the complaint to add Owner. Robert sought the removal of the barrier that allegedly caused Kathleen's fall, as well 21 other barriers that similarly affect persons with Kathleen's disability. (42 U.S.C. § 12188(a)(2); §§ 377.20, 377.30.) While it does not appear that a successor in interest such as Robert would not have standing in a federal court to commence an ADA claim for injunctive relief (because Kathleen cannot return to the Property as required under federal law), the issue of "whether or not a party has standing to bring an ADA claim in state court is a question of state law rather than federal law." (See *Riviera, supra,* 686 A.2d at pp. 1271–1272.)

It is well established that California courts are not bound by the case-or-controversy standing requirement of the federal constitution or the federal courts. (See e.g., *Asarco Inc. v. Kadish, supra*, 490 U.S. at p. 617.) And because the instant lawsuit was filed the Orange County Superior Court, we apply California's broader "'personal interest'" standing rules. (See *Bilafer v. Bilafer, supra*, 161 Cal.App.4th at p. 370; *Nike, Inc. v. Kasky, supra*, 539 U.S. at p. 661, fn. 2.)

In short, we find Robert's status as Katherine's successor in interest means he had a sufficient "'personal interest in the litigation's

17

outcome'" as required in California. (See *Bilafer v. Bilafer, supra,* 161 Cal.App.4th at p. 370.) Indeed, Robert's Title III ADA claim is simply a continuance of Kathleen's right to commence the same cause of action that she had before her death. (See §§ 377.20, 377.30.) Furthermore, in a California court Robert is allowed to seek injunctive relief, in part, based on the interests of third parties, as well as the interest of the public in general. (See *Pacific Gas & Elec. Co. v. Minnette, supra,* 115 Cal.App.2d at p. 709.)

In this case, we are at the summary judgment stage, so we must accept as true that there are 22 continuing barriers at Owner's Property (the restaurant and the surrounding property) that are in current violation of the ADA. The removal or modification of these unlawful barriers through a private right of action under Title III of the ADA is plainly in support of the public's interest in preventing "discrimination against disabled individuals." (*Martin, supra,* 532 U.S. at p. 674.)

Thus, we hold Robert had standing to file a Title III ADA cause of action in the Orange County Superior Court, and we further hold that the trial court improperly granted Owner's motion for summary judgment as to the ADA cause of action.

Owner argues Title III of the ADA only allows for injunctive relief and: "It is . . . well established that standing to bring an action for injunctive relief requires a 'real or immediate threat' that the plaintiff will suffer and injury in the future." But the United States Supreme Court case Owner cites for this "well established" proposition makes clear that "state courts need not impose the same standing or remedial requirements that govern federal-court proceedings." (*Lyons*, *supra*, 461 U.S. at p. 113.)

Similarly, the other cases cited by Owner all involve Title III

18

ADA claims commenced by plaintiffs in federal courts rather than state courts, so they are inapposite. (See, e.g., *Plumley v. Landmark Chevrolet, Inc.* (5th Cir. 1997) 122 F.3d 308, 310 [plaintiff's Title III claim under the ADA filed in federal district court did not survive plaintiff's death]; *Wojewski v. Rapid City Regional Hospital, Inc.* (8th Cir. 2006) 450 F.3d 338, 342 [an ADA claim for injunctive relief under Title III was moot when the plaintiff passed away while the appeal was pending].)

Owner also argues that the theory supporting standing (this is a procedural issue of state law rather than case-or-controversy issue under federal law) was raised by amicus for the first time on appeal; therefore, Robert's standing issue has been forfeited because it was not adequately preserved in the trial court. We disagree.

"'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.'" (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 987.)

However, the general rule is not absolute: "As an exception to the general rule, the appellate court has discretion to consider issues raised for the first time on appeal where the relevant facts are undisputed and could not have been altered by the presentation of additional evidence." (*Duran v. Obesity Research Institute, LLC* (2016) 1 Cal.App.5th 635, 646.) "Moreover, appellate courts are most likely to consider an issue involving undisputed facts for the first time on appeal where the issue involves important questions of public policy or public concern." (*Ibid.*) "Although plaintiff did not raise or argue this issue below or, indeed, in his initial briefs to this court, we are nonetheless free to consider the matter since it involves an issue of

19

law on undisputed facts which may be raised for the first time on appeal. [Citations.]  It makes no difference that the issue was first raised on appeal by the court rather than the parties, as long as the parties have been given a reasonable opportunity to address it." (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1341, fn. 6.)

The issue of standing was extensively litigated in the trial court. The issue was raised by Owner in its motion for summary judgment.  Robert responded, in part, that he had standing under California's survivorship statutes.  The issue was then squarely addressed by the court in its ruling (although the court used the term "mootness" rather than "standing"). Perhaps the supporting legal theories were more precisely addressed in the amicus curie brief, but Owner has had a reasonable opportunity to address those legal theories both in writing and in oral argument.  Moreover, the issue of successor standing under Title III of the ADA in a California court is a pure question of law based on undisputed facts and concerns important questions of public policy.  (See *Duran v. Obesity Research Institute, LLC, supra,* 1 Cal.App.5th at p. 646.)

Thus, we find that Robert has not forfeited the issue of standing.

## B. The Unruh Act and the DPA Claims

The Unruh Act provides:  "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, *disability*, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business

20

establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) The law was designed to "create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments." (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167.)

The DPA more specifically guarantees protections for disabled persons: "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." (Civ. Code, § 54, subd. (a).)

The Unruh Act includes the protections against discrimination created by the ADA. "A violation of the right of any individual under the [ADA] shall also constitute a violation of this section." (Civ. Code, § 51, subd. (f).) The DPA similarly includes the same ADA protections: "A violation of the right of an individual under the [ADA] also constitutes a violation of this section." (Civ. Code, § 54, subd. (c).)

The primary distinction between the Unruh Act and the DPA are the statutory damages available to the plaintiff. The Unruh Act provides for a $4,000 remedy per violation. (Civ. Code, § 52, subd. (a).) The DPA provides for a lower damage remedy of $1,000 per violation.[10] (Civ. Code, § 54.3, subd. (a).) Under both statutes—and completely unlike the ADA—a plaintiff can only recover statutory damages for accessibility violations that actually occurred on a particular occasion, "rather than being based on the number of

---

[10] Another distinction between the Unruh Act and the DPA is that with the exception of disability access claims, intentional discrimination is a required element under the Unruh Act. (*Munson, supra,* 46 Cal.4th at pp. 664–665.)

21

accessibility standards violated." (*Munson, supra*, 46 Cal.4th at p. 678.) When it comes to the damages remedy, a plaintiff must ultimately make an election between the two statutes: "Recognizing the overlap between the Unruh Civil Rights Act and the Disabled Persons Act, the Legislature expressly foreclosed double recovery." (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1045 (*Jankey*).)

In addition to monetary damages, injunctive relief is available as a cumulative remedy for violations of our state's disability access laws, regardless of whether the plaintiff elects to proceed under the Unruh Act or the DPA. (Civ. Code, §§ 52, subd. (c)(3), 54; *Molski v. Arciero Wine Group* (2008) 164 Cal.App.4th 786, 792 ["A plaintiff must make an election between recovering under the Unruh Civil Rights Act or the DPA, but injunctive relief under [Civil Code] section 55 is available as a cumulative remedy in either case"];[11] *Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 943 ["the Unruh Act and the DPA permit 'any person aggrieved' to seek injunctive relief"]; *Jankey, supra,* 55 Cal.4th at p. 1051 ["courts have issued injunctive relief under state law without requiring proof that a plaintiff intends to encounter or has been deterred from encountering a given architectural barrier"].)

"A person is an indispensable party to litigation "'if his or her rights must necessarily be affected by the judgment.'" [Citations.] Stated differently, 'Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party.'" (*Washington Mutual Bank v.*

---

[11] "Any person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code . . . may bring an action to enjoin the violation." (Civ. Code, § 55.)

22

*Blechman* (2007) 157 Cal.App.4th 662, 667; see also § 17, sub.d (b)(6) ["'Person' includes a corporation as well as a natural person"].)

Here, Robert alleged in the disability access complaint that on September 14, 2014, Kathleen was denied full and equal access to the Property (the restaurant and the surrounding property). But in the motion for summary judgment, Owner established as an undisputed material fact that on that date, it "did not own, operate, lease, or have any connection, whatsoever, to the Property." Therefore, we find Owner is not liable for any statutory *damages* under the Unruh Act or the DPA, because the violations Kathleen allegedly encountered on September 14, 2014, occurred well before the time that Owner had any interest in the Property. (See § 377.34, subd. (a) ["the *damages* recoverable are limited to the loss or damage that the decedent sustained or incurred before death"], italics added.)

However, Robert sought injunctive relief in the disability access complaint, and he established as an undisputed material fact that the Property continues to be in the same general condition as it was on September 14, 2014. That is, there is a triable issue of fact as to whether Owner is in current violation of the Unruh Act and the DPA; therefore, we find Robert is permitted to seek injunctive relief as a successor in interest to correct these violations. (See *Jankey, supra,* 55 Cal.4th at p. 1051 ["courts have issued injunctive relief under state law without requiring proof that a plaintiff intends to encounter or has been deterred from encountering a given architectural barrier"].)

Further, we find Owner is an indispensable party because its rights will necessarily be affected in the event that the trial court issues injunctive relief. (See *Washington Mutual Bank v. Blechman, supra,* 157

23

Cal.App.4th at p. 667.) That is, if the court orders the removal or remediation of barriers, those orders will necessarily need to be complied with by the current owner of the Property (Owner), rather than the former owner (Gnirob), which is still a party to the litigation as to the Unruh Act and the DPA causes of action. (See *Pacific Hills Homeowners Assn. v. Prun* (2008) 160 Cal.App.4th 1557, 1567 ["Injunctions are based on equity"].)

Thus, we find the trial court improperly granted Owner's motion for summary judgment as to the Unruh Act and DPA claims, and we overrule the trial court's summary judgment ruling in this regard.

Owner argues the disability access "complaint does not assert an independent cause of action for violation of the DPA. [Citation.] By failing to advance a claim for violation of the DPA at the trial court level and in opposition to the motion for summary judgment, Plaintiff unequivocally waived the argument." We disagree.

In the disability access complaint, Robert stated the first cause of action's heading as: "VIOLATION OF CALIFORNIA CIVIL CODE." Robert alleged within the text underneath that: "Based on the facts plead herein above and elsewhere in this Complaint, Defendants did, and continue to, discriminate against Plaintiff and other similarly situated disabled persons by denying disabled persons full and equal access to and enjoyment of the subject facilities and of Defendants' goods, services, facilities, privileges, advantages or accommodations within a public accommodation, in violation of the Americans with Disabilities Act of 1990, California Civil Code §§ 51, et seq., 52, et seq. and/or sec. 54, et seq. , at Plaintiff's election."

The Unruh Act is generally understood to encompass Civil Code section 51 and the statutes that immediately follow. (See *Marina Point, Ltd.*

*v. Wolfson* (1982) 30 Cal.3d 721, 724 ["The tenants now appeal from the judgment in favor of the landlord, contending that the exclusionary policy violates their statutory rights under the Unruh Civil Rights Act (Civ. Code, § 51 et seq.)"].)  However, only Civil Code section 51 itself  designated as the Unruh Civil Rights Act.  (Civ. Code, § 51, subd. (a) ["This section shall be known, and may be cited, as the Unruh Civil Rights Act"].)

Similarly, the DPA is generally understood to encompass Civil Code section 54 and the statutes that immediately follow.   (See *Jankey*, *supra*, 55 Cal.4th at p. 1042 ["Jankey asserted violations of the federal ADA, the Unruh Civil Rights Act (§ 51 et seq.), the Disabled Persons Act (§ 54 et seq.)"].)  However, there is no official title of "the DPA" within the Civil Code. (*Munson*, *supra*, 46 Cal.4th at p. 674, fn. 8.)

Given the generally understood meanings of the relevant terms, we find Robert's first cause of action in the disability access complaint gave Owner fair notice that Robert was pursuing a claim under the DPA, in addition to what is commonly understood as the Unruh Act.  Indeed, in its written ruling granting Owner's motion for summary judgment, the trial court stated:  "Plaintiff's [complaint] alleges Defendants violated the Unruh Act (Civ. Code, §§ 51, 52, *54, et seq*.)."  (Italics added.)  Although the court did not include the words "the DPA" in its ruling, the court referenced one of the statutes that is commonly understood as part of "the DPA."  Thus, we conclude Robert's DPA claim has <u>not</u> been forfeited for purposes of appeal.

Owner alternatively argues that even if Robert has not forfeited his DPA claim, he "does not claim to be disabled himself . . . and has consistently sought relief solely in his as Decedent's successor-in-interest. The scope of DPA standing is not broad enough to include Plaintiff."  But

Owner cites no authority for this proposition. We see no reason in law or equity as to why a DPA civil cause of action (or for that matter an Unruh Act cause of action or an ADA cause of action) should somehow be categorically exempt from the survivorship statutes outlined in the Code of Civil Procedure. (See §§ 377.20 ["a cause of action for or against a person is not lost by reason of the person's death"]; 377.30 ["A cause of action that survives the death of the person entitled to commence an action . . . passes to the decedent's successor in interest"].)

*C. The Attorney Sanctions Order*

Under the Code of Civil Procedure, an attorney may not make frivolous arguments to a court. (§ 128.7, subd. (b)(2).) "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] . . . [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a *nonfrivolous argument* for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subd. (b)(2), italics added.)

Indeed, if an attorney makes a frivolous argument to a court, then the attorney may be subject to sanctions. (§ 128.7, subd. (c).) "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the

26

violation.  In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence." (§ 128.7, subd. (c).)

A legally frivolous claim is one that is objectively unreasonable: "A claim is factually frivolous if it is 'not well grounded in fact' and is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.]  In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable.  [Citation.]  A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.'" (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 189.)

Here, the trial court ordered Robert's attorney to pay Owner $98,852 in sanctions under section 128.7 on the sole basis that the disability access claims the attorney was pursuing against Owner "were factually and legally frivolous."

But we have determined Robert's ADA, Unruh Act, and DPA claims are supported by the facts developed at the summary judgment stage and are arguably legally meritorious (i.e., not frivolous).  Thus, we find the trial court erred by imposing the attorney sanctions award.

In its amicus brief, the CAOC compellingly argues the attorney sanction order against Robert's (the plaintiff's) attorney should be reversed "in order to avoid deterring the zealous advocacy on which the common law's vitality depends." (Boldface omitted.)

While we need not reach that larger issue due to our decision on the merits, we note that the CAOC's public policy argument is well taken.

27

III

DISPOSITION

The trial court's order granting Owner's motion for summary judgment as to Robert's first and second causes of action is reversed (the Unruh Act, DPA, and federal ADA causes of action). The court's order granting Owner's motion for summary judgment as to Robert's third and fourth causes of action is affirmed (injunctive and declaratory relief). The court's order of sanctions against Robert's attorney in the amount of $98,852 is reversed. Owner's motion filed in this court for sanctions against Robert and his attorney for filing an allegedly frivolous appeal is denied.

Costs on appeal are awarded to Appellants.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MOTOIKE, J.